property to a receiver in supplementary proceedings, because a sale by the receiver would cut off the right of redemption which the debtor would have upon a sale under execution, and the creditor was left to the latter remedy. In that case, also, the court found strong evidence of collusion, and an attempt to exonerate one judgment debtor by collecting the judgment out of the other. The court also found the return to be false, though attacked collaterally, because the order directing the transfer to the receiver showed the defendant to be seised and possessed of property subject to levy. The proofs in that case also showed that the defendant's property was worth, above incumbrances, far more than was sufficient to satisfy the plaintiff's judgment in full. And, finally, the court determined that there was no necessity for the transfer, the title to real property vesting in the receiver by operation of law,—citing Manning v. Evans, 19 Hun, 500, and other cases. We do not decide that the court would not have the right to refuse the appointment of a receiver if it appeared that the property of the judgment debtor, subject to levy, was sufficient to satisfy the judgment, or if for any good reason it appeared inequitable to make the appointment; but it is manifest that such a conclusion should not be reached, in view of the sheriff's return, until the creditor, by examination under his order, had had an opportunity of ascertaining the facts, and of ascertaining if the debtor had other property to which resort should be afforded the creditor.

The orders of the general term and special term should be reversed, and the case remitted to the city court, special term, to proceed with the examination under the order of June 21, 1897. Costs to appellant. All concur.

---

CATTARAUGUS CUTLERY CO. v. BUFFALO, R. & P. RY. CO.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1897.)

1. CARRIERS—BAGGAGE—LIABILITY AS BAILEE—GROSS NEGLIGENCE.

A carrier transporting goods of a principal, as baggage of his traveling agent, without notice of the principal's ownership, is liable to the principal only for gross negligence, as a gratuitous bailee.

2. SAME—EVIDENCE.

A finding that a carrier was grossly negligent in allowing goods in its baggage room to be destroyed by fire is against the weight of the evidence, where it was shown that when the fire was discovered it was unsafe to enter the baggage room, and there was no opportunity to remove the goods, and the testimony of plaintiff's witnesses that inquiry had been made as to the removal of the goods was contradicted by defendant's witness, who was corroborated by others and the circumstances attending the fire.

Appeal from trial term, Cattaraugus county.

Action by the Cattaraugus Cutlery Company against the Buffalo, Rochester & Pittsburgh Railway Company. From a judgment entered on a verdict for plaintiff for $507, and an order denying a motion for a new trial, defendant appeals. Reversed.

At the close of the plaintiff's evidence a motion for a nonsuit was made and denied, and an exception was taken; and at the close of the whole evidence a motion was made by the defendant for a direction of a verdict in favor of the defendant on the grounds "(1) that the plaintiff has shown no cause of action,

as against the defendant; (2) that there was no relation of carrier and passenger, or warehouseman and shipper, as between the plaintiff and the defendant; (3) that no negligence on the part of the defendant has been shown; (4) and, further, assuming that there was some duty owing to the plaintiff by the defendant, such duty could only be shown to be violated by evidence of gross negligence, and there is no evidence in this case to make that a question of fact,—gross negligence." The motion was denied, and the defendant took an exception.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Henry G. Danforth, for appellant.
Milford W. Rider, for respondent.

HARDIN, P. J. Plaintiff by this action seeks to recover the value of two sample cases and contents, which were destroyed by fire in the defendant's baggage room at Bradford, Pa. On the 31st of March, 1893, Claude Wilson, then in the employ of the plaintiff, took passage on the defendant's railroad from Johnsonburg, Pa., to Bradford, Pa., and checked as baggage two sample cases and contents, consisting of knives and other cutlery, the property of the plaintiff. The train on which Wilson and the samples were transported arrived at Bradford about 5 o'clock in the afternoon of that day. The property was removed from the train to the defendant's station house, and Wilson went to an hotel for the night. No demand was made for the cases or trunks prior to the occurrence of the fire, which destroyed the Higgins House, situated east of the depot of the defendant some 50 to 75 feet, on the east side of the tracks; the depot being on the west side. The station building was built of wood, one story high, and extended northerly from Main street; the ladies' waiting room being the room nearest the street, and next north of that was the ticket office, and then the men's waiting room, and then the baggage room; all being under the same roof, but not connected by doors. On the easterly side of the building was a wooden platform, 12 or 14 feet wide, and next to this was the railroad track, occupying about 30 feet, and then a driveway of some 12 feet, and then next easterly was the Higgins House, in v. .ich a fire originated about half past 3 in the morning. Soon after the fire broke out in the hotel, it was communicated to the defendant's station building, near the baggage room. The only door to the baggage room was on the east side, facing the direction of the hotel. The fire made rapid progress, and Collins, the baggage master, as soon as he discovered the fire in the hotel, made efforts to arouse the station agent, Lundergan, who lodged west of the baggage room some 100 feet. As soon as he aroused the station agent, he went back to the station building, to remove from the building some Italians who had been locked in the men's waiting room, and succeeded in getting them out of the building; he then warned some women who were in the ladies' waiting room; and he states that it was then too late for him to save anything from the baggage room. The station building, by 5 o'clock in the morning, had been entirely destroyed.

The property claimed by the plaintiff belonged to it, and was not the property of Wilson, and the evidence fails to show any contract-

ual relation between the defendant and the plaintiff. Talcott v. Railroad Co., 66 Hun, 462, 21 N. Y. Supp. 318. At the close of the plaintiff's evidence, it disclaimed "to recover against the defendant as a common carrier," and asserted its right to recover against the defendant as a warehouseman. In the argument now submitted to the court, it is said in behalf of the plaintiff that it "did not seek to hold the defendant liable upon the ground that the defendant was a common carrier of the sample cases in question, nor upon the ground that the sample cases were baggage of the plaintiff's agent, Wilson, nor upon the ground that the defendant was liable as a warehouseman." It is insisted, however, in behalf of the plaintiff, that "the action was based upon an entirely different theory"; and it is then stated that "the complaint alleges that when the depot containing the samples was threatened with fire, and when it was evident that it would burn, the servants of the company would not permit the plaintiff's agent to save the samples, and refused him admission to the depot for that purpose; and it also alleges negligence on the part of the defendant in not removing the property from the building." When the trial judge submitted the case to the jury, he instructed the jury that, in order to recover, the plaintiff must establish that the conduct of the defendant amounted to willful neglect; "that it was liable of willful neglect, of willful misconduct in the management of this property, under the circumstances, or of an utter disregard of its duty in preserving and protecting it." The plaintiff now seeks to place the liability of the defendant upon the obligation of a gratuitous bailee, and our attention is called to the rule stated in 3 Am. & Eng. Enc. Law (2d Ed.) p. 533, as follows:

"A passenger cannot include in his baggage the property of other persons. He is entitled to carry with him, and recover for, only such articles as are carried for his own personal comfort and convenience. As to such property of other persons, the carrier is liable only as a gratuitous bailee. * * * The liability of a carrier for merchandise which it has been induced to carry as baggage without knowledge of its character is that of a gratuitous bailee. Negligence on its part, causing the loss or injury to the property carried, must be clearly shown, and cannot be presumed from the mere fact of the loss or injury."

Mr. Redfield, in his Law of Railways (3d Ed., vol. 2, p. 150), says:

"But the carrier, although not liable as an insurer, will be liable as an ordinary bailee without hire, for any loss or damage which is proved to have been caused by his own gross negligence, or that of his servants."

There is no evidence in the case tending to show that the defendant knew that the cases and the property therein belonged to the plaintiff, and that it undertook with the plaintiff for the safe-keeping of the same.

Our attention is called to Gurney v. Railway Co. (Sup.) 14 N. Y. Supp. 321, affirmed 138 N. Y. 638, 34 N. E. 512. That case lays down a rule which we think is applicable to the one in hand. In that case it was said that:

"If goods belonging to another person be placed in the trunk of a passenger on a railroad, although such company accepts the trunk for transportation as baggage, in the usual manner, if its servants or agents have no notice of the presence of such merchandise no liability will arise on the part of the carrier to the owner of the merchandise, in case of its loss or destruction."

In the course of the opinion it was said:

"The transportation company, under the rules of law applicable, is liable for gross neglect, and nothing less will suffice to make it liable. Now, what is gross neglect? As contradistinguished from ordinary neglect, gross neglect means acts equivalent to willful acts upon the part of the bailee by which the property is lost. Where he willfully refuses to take any precaution for the purpose of saving or caring for the property, the bailee is guilty of gross neglect. It is not where he simply fails to use the ordinary care which a prudent person would exercise under the circumstances."

When the fire was discovered by the baggagemaster, Collins, and became known to Lundergan, the station agent, it had made such progress that there was great heat caused around and about the depot, to such an extent, within a short time, as to render it unsafe to enter the baggage room; and, according to the testimony of the defendant's witnesses, there was no opportunity to remove the baggage belonging to the plaintiff, or the property of the defendant, from the baggage room. The testimony given by Wilson and Holcomb, to the effect that an inquiry was made of Collins as to whether the property had been removed, is distinctly contradicted by Collins; and he, to some extent, is corroborated by the other evidence, and by the circumstances of the case. So far as the verdict of the jury rests upon the finding that the defendant was, under the circumstances, guilty of gross negligence or willful misconduct, we are of the opinion that it is against the weight of the evidence. Reid v. Young, 7 App. Div. 400, 39 N. Y. Supp. 899; Curry v. Wiborn, 12 App. Div. 1, 42 N. Y. Supp. 178.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except WARD, J., not voting.