STEPHEN M. WELD et al., Respondents, *v.* POSTAL TELE-GRAPH-CABLE COMPANY, Appellant.

Telegraph company — right to make regulations for the reception and transmission of messages — liability of company for gross negligence in transmission of messages — evidence — when evidence insufficient to sustain verdict that company was guilty of gross negligence.

1. A telegraph company has a right to make reasonable regulations for the transaction of its business and to protect itself against liability which it might otherwise incur due to the carelessness of its agents and mistakes and defaults incident to the transaction of its business.

2. The stipulations printed on the blank forms used in sending telegrams, which provide for repeating and insuring a message and limit

the liability of the company, are reasonable regulations and create a contract between the sender of a message and a telegraph company.

3. Notwithstanding the right of a telegraph company to adopt such regulations and the contract, made between the sender of a message and the company, public policy forbids that such regulations and contract shall relieve a telegraph company from liability caused by *gross* negligence of its agents and employees.

4. Plaintiffs, cotton brokers in New York city, delivered to defendant for transmission to New Orleans a message which read: "To Ellis, Sell 20 thousand Mch 12.70;" as delivered, it read: "To Ellis, Sell twenty thousand March 1207." Although the usual stipulation with regard thereto was printed on the reverse side of the blank, the message was not directed to be repeated nor was it insured. The telegram related to sales of cotton and evidence was given by plaintiffs to show the sale on their account by the firm to whom it was directed of 20,000 bales of cotton at a loss of a considerable sum by reason of the change in the figures from 12.70 to 1207. A number of circumstances, in connection with the transmission and receipt of the message by operators of defendant, were relied upon by plaintiff to justify an inference of gross negligence on the part of defendant, which the trial justice submitted to the jury. Upon examination of the facts, *held*, that they were equally consistent with the absence as with the existence of gross negligence and, therefore, failed to establish the essential facts necessary to a recovery. (*Halsted* v. *Postal Telegraph-Cable Co.*, 193 N. Y. 293, 303, approved and followed.)

*Weld* v. *Postal Telegraph-Cable Co.*, 148 App. Div. 588, reversed.

(Argued October 29, 1913; decided December 30, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 31, 1912, affirming a judgment in favor of plaintiffs entered upon a verdict.

Plaintiffs, as copartners, under the name and style of Stephen M. Weld & Co., were engaged in the business of cotton brokers in the city of New York and are members of the New York Cotton Exchange. On December 4th, 1905, and for some time prior thereto the defendant maintained a special office for the transaction of its business as a telegraph company in the building occupied by the Cotton Exchange in the city of New York and a similar office in the New Orleans Cotton Exchange. Communi-

cations between these two exchanges were carried on by means of two direct duplex wires known as "A" and "B." December 4, 1905, Edward M. Weld, one of the plaintiffs, delivered to defendant at its office in the New York Cotton Exchange a message for transmission to New Orleans, written upon one of the blanks furnished by defendant, of which the following is a copy:

"Counter Number     Time Filed     Check.

"Send the following message, without repeating, subject to the terms and conditions printed on the back hereof, which are hereby agreed to.

"Dec. 4 1905

"To Ellis N. O.

"Sell 20 thousand Mch 12.70
"Weld"

Upon the reverse side, amongst the stipulations, was the following:

"THE POSTAL TELEGRAPH-CABLE COMPANY, (incorporated) transmits and delivers the within message subject to the following terms and conditions:

"To guard against mistakes or delays, the sender of a message should order it REPEATED; that is, telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition. It is agreed between the sender of the message written on the face hereof and the Postal Telegraph-Cable Company, that said Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any UNRE-PEATED message, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any REPEATED message beyond fifty times the sum received for sending the same, unless specially insured, nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages   *   *   *

"Correctness in the transmission of messages to any point on the lines of the Company can be INSURED by contract in writing, stating agreed amount of risk and payment of premium thereon, at the following rates, in addition to the usual charge for repeated messages, viz: one per cent. for any distance not exceeding 1,000 miles and two per cent. for any greater distance   *   *   *"

The message was not ordered by Mr. Weld to be repeated. The tariff for forwarding the same, sixty cents, was paid by the plaintiffs. It is conceded that the message as delivered to defendant's operator was intended to instruct Ellis & Co., plaintiffs' brokers, in New Orleans to sell twenty thousand bales of cotton at $0.1270 cents per pound for delivery in March.

The original message read in evidence contained certain words and figures which were not placed thereon by Mr. Weld, to wit: Under the words "Time Filed" was placed "1.39 P. M." indicating the hour (New York time) the message was sent. Under the words "Check" appeared "9 – 60" representing the number of words (each figure counting as a word) and the amount paid for the transmission of the message, sixty cents.

The message as delivered read as follows:

"Number      Sent by      Rec'd by      Check
    b 84 Kx                  Kx              8
"Dated Kx. New York. Dec 1905      Received at
                                              1244
                                   (Where any reply
                                    should be sent)
"To Ellis                              190
      "Sell twenty thousand
            "March 1207
                  "Well"

One Henican, the board member of the firm of Ellis & Co., received the message at 12.43¾ New Orleans time or 1.43¾ New York time, four and three-quarters min-

utes after the message was marked as having been sent, and understood from the same that he was to sell for the account of the plaintiffs 20,000 bales of cotton for delivery in March at the prevailing market prices not under 12.07. He was not misled by the signature " Well " instead of " Weld." The mark " b 84 " indicated that the message was the 84th message sent on the " B " wire that day. The blank under the printed words " Sent by " was used for the sending operator's signal and it was the duty of the receiving operator to fill in that blank. The mark " Kx " under the printed words " Rec'd by " signified the receiving operator's wire signal. The figure " 8 " under the word " Check " represents the number of words in the message. The figures " 1244 " under the words " Received at " designate the time the telegram was received. After the printed word " Dated " occur the words " Kx. New York, Dec 1905 " in red stamp. The words " Kx. New York " mean that the message originated in the Cotton Exchange office in New York. The receiving operator in New Orleans made manifold copies of all telegram orders received in the Cotton Exchange office. A carbon sheet was placed between two blanks and the message written, the original delivered to the party addressed and the carbon copy retained for filing in the office.

A manifold copy of the message was produced on the trial, and the following is a copy of the same:

" Del No
390

| " Number | Sent by | Rec'd by | Check |
|----------|---------|----------|-------|
| " B 84 Kx |         | Kx       |       |

  " Kx New York.

" Dated Dec 4, 1905     Received at
         1244 P

    " (Where any reply should be sent)
" To Ellis

   " Sell twenty thousand March 1207
           " Well "

The carbon copy varied from the original in that the figure " 4 " followed the word " Dec " and the figure " 60 " followed the figure " 8 " under the word " Check." The words " Del No 390 " were added. The letter " P " followed the figures " 1244." The letters and figures " Dec—— 05 " on the original and copy were stamped on the blanks each morning for the purpose of saving time. The figures " 60 " indicated the price of transmission of the message. It was not the duty of the receiving operator to place the figures " 60 " on the message as delivered; they were placed there for the purpose of audit and accounting. The letter " P " was an abbreviation for afternoon, showing receipt of the message at 12:44 P. M. Under the printed words " Sent by " appears a blank which was used for the sending operator's signal. This blank was not filled due to a general order in force in December, 1905, which provided the same should be omitted.

December 4, 1905, was known as " Bureau Day," when the government published an annual report in regard to the prospective cotton crop. The publication of such report results in activity and fluctuations in the market. On the day in question a large volume of business was transacted on the Exchange. Wire " A " had been in general use down near to the time when the telegram in controversy was presented. Wire " B " was used for the overflow business and when wire " A " was interrupted. The message was transmitted on wire " B."

Mr. Weld first sought to have an oral message sent by defendant to Ellis & Co., to " sell thirty thousand March 12.70 " but the manager declined to send the same, saying " No, that is too big." Thereupon the message referred to was written and the time " 1.39 " placed thereon. The sending operator had knowledge of a refusal to send the oral message and wired the operator at New Orleans, " Here comes a big order," it being greater than any theretofore sent by him. He received the written mes-

sage from Mr. Weld, and asserted upon the trial that he transmitted the same as written. The operator at New Orleans asked him on the wire " if that was ' twenty ' — that is the ' 20 ' — I replied that it was ' twenty ' spelling the word out."

Wire " B " ran directly through the office of the defendant at New Orleans, where, as claimed by the plaintiffs, it passed through a machine known as a Morsegraph, from which it continued to the New Orleans Cotton Exchange. The Morsegraph automatically records on the tape all messages that come over the wire passing through it. Defendant also keeps a book called a " log " of the working of the Morsegraph. These records are kept by the defendant for six months from the day the messages recorded pass over the wires. Prior to the expiration of six months from the time when this particular message was sent, the attorney for the plaintiff notified the defendant to preserve the record of this message as it would be needed at the trial of this action. This the defendant failed to do, and at the trial it was admitted that the record had been destroyed. Witnesses were called by the defendant and they testified that on December 4, 1905, the Morsegraph was not in operation as claimed by the plaintiffs.

Plaintiffs offered evidence to show the sale by Ellis & Co. of twenty thousand bales of cotton on their account at prices below 12.70 per pound, and the purchase after discovery of the error of 20,000 bales, resulting in a loss to them, including broker's commissions, of $27,565.

Upon the trial plaintiffs had a verdict inclusive of interest for $36,684.12. Judgment was entered thereon and for costs, and the judgment was affirmed by a divided court in the Appellate Division, from which judgment defendant appeals to this court.

*Charles F. Brown, Ralph H. Overbaugh* and *William W. Cook* for appellant. The contract entered into by

the plaintiffs prior to the sending of the message in question is valid and reasonable and the plaintiffs are bound thereby unless the defendant is shown to have been guilty of gross negligence. To establish their right to recover it was necessary for the plaintiffs to prove that the defendant was guilty of gross negligence in the transmission of the dispatch in question. (*Halsted* v. *Postal T. C. Co.*, 193 N. Y. 293; *Weld* v. *Postal T. C. Co.*, 199 N. Y. 88.) The contract entered into by the plaintiffs prior to the sending of this message is valid and reasonable and the plaintiffs are bound thereby, there not having been any gross negligence or willful negligence. It was necessary for the plaintiffs to show that the defendant was guilty of gross negligence or willful negligence in order to sustain a recovery. The plaintiffs have not done this. In fact the evidence shows that the defendant was free from negligence of any kind. (*Halsted* v. *Postal T. C. Co.*, 193 N. Y. 293; *Primrose* v. *W. U. Tel. Co.*, 154 U. S. 1; *Kiley* v. *W. U. Tel. Co.*, 109 N. Y. 231; *Breese* v. *U. S. Tel. Co.*, 48 N. Y. 132; *Schwartz* v. *A. & P. Tel. Co.*, 18 Hun, 157; *Bennett* v. *W. U. Tel. Co.*, 18 N. Y. S. R. 777; *Riley* v. *W. U. Tel. Co.*, 26 N. Y. Supp. 532; *French* v. *B., N. Y. & E. R. R. Co*, 4 Keyes, 108.) It was reversible error for the court to charge that the jury might consider whether under all the circumstances it was the duty of the defendant to "confirm or repeat" the message in question. (*Colman* v. *Clark*, 203 N. Y. 36.) The exception to the charge that the jury could find gross negligence in the failure on the part of the defendant to exercise the care required under the circumstances and the exception to the court's refusal to charge that the failure to exercise the care required under the circumstances was not gross negligence unless the failure to exercise such care was intentional or willful, was well taken. (*Halsted* v. *Postal T. C. Co.*, 193 N. Y. 293; *Primrose* v. *W. U. Tel. Co.*, 154 U. S. 1.)

*Henry W. Taft, Gordon Knox Bell* and *Edward H. Blanc* for respondents.   Gross negligence is a question of fact depending upon all the circumstance of the case; and that question, upon the circumstances of the case at bar, has been irrevocably answered in respondents' favor. (*M., etc., R. R. Co.* v. *Arms,* 91 U. S. 489; *New World* v. *King,* 16 How. [U. S.] 470; *Nolton* v. *W. R. R. Co.,* 15 N. Y. 444; *Hun* v. *Cary,* 82 N. Y. 65; *Elwood* v. *W. U. Tel. Co.,* 45 N. Y. 549; *Leonard* v. *N. Y. A. & B. E. M. Tel. Co.,* 41 N. Y. 544; *Breese* v. *U. S. Tel. Co.,* 48 N. Y. 132; *Will* v. *Postal T. C. Co.,* 3 App. Div. 22; *Dixon* v. *W. U. Tel. Co.,* 3 App. Div. 60; *Mowry* v. *W. U. Tel. Co.,* 51 Hun, 126.)

HOGAN, J.   This court in several cases has considered the privileges and liabilities of a telegraph company and determined as follows:

That such a company has a right to make reasonable regulations for the transaction of its business and to protect itself against liability which it might otherwise incur due to the carelessness of its agents and mistakes and defaults incident to the transaction of its business.

That the stipulations printed in the blank form used in sending telegrams, adopted by the defendant and set forth in the statement of facts prefacing this opinion, were reasonable regulations and created a contract between the sender of the message and the telegraph company.

That, notwithstanding the right of a telegraph company to adopt such regulations and the contract made between the sender of a message and the company, public policy forbids that such regulations and contract shall relieve a telegraph company from liability caused by *gross* negligence of its agents and employees. (*Kiley* v. *Western Union Tel. Co.,* 109 N. Y. 231; *Halsted* v. *Postal Tel. Cable Co.,* 193 N. Y. 293; *Weld* v. *Postal Tel. Cable Co.,* 199 N. Y. 88.)

The trial justice stated to the jury the rules of law referred to and charged that the question to be determined in this action is, " Was this such a mistake as these people contracted with each other should not be construed as a ground of damage, or was it a mistake arising from the *gross* negligence of the defendant's employees or some one of them ? If it was a mere mistake, no matter how arising, there can be no recovery by the plaintiffs, and there can be no such recovery unless you find that mistake was caused by the gross negligence of the defendant's employee."

In view of an affirmance by the Appellate Division by a divided court, we must determine whether or not the circumstances, or any of them, adduced upon the trial of this action, justified the trial justice in a submission of the case to the jury upon the question of gross negligence upon the part of the defendant.

On behalf of the plaintiffs, it is asserted that the following circumstances, taken together, disclose gross negligence on the part of the telegraph company: (1) December 4, 1905, was " Bureau Day," as described; that defendant's employees had knowledge of the commotion it was likely to arouse, and it was, therefore, incumbent upon it to provide extraordinary facilities to insure speed and accuracy in the transmission and receipt of messages; (2) the fact that the sending operator had never sent so large an order prior to that day, and that he called the New Orleans operator and warned him " Here comes a big order; " (3) that the message was not immediately received in New Orleans; having been sent 1: 39 P. M. New York time it should have been received at New Orleans at 12: 39 P. M. New Orleans time, and the large amount of business that day demanded more than ordinary promptness; the message was marked received at 12: 44 P. M., while as a matter of fact it was delivered at 12: 43¾ P. M.; (4) the operator at New Orleans, upon the receipt of the message, immediately asked the send-

ing operator at New York whether the figures "20" was "twenty" written, to which a reply was made "twenty," thus disclosing knowledge by the New Orleans operator of the importance and magnitude of the order; (5) the omission of "N. O." written by Mr. Weld on the message to be sent; (6) the change of "20" in figures to "twenty;" (7) the word "Mch" in message as written changed to "March" when received; (8) a transposition of figures "12.70" to "1207" omitting the decimal point; (9) the change in signature from "Weld" to "Well;" (10) the failure of receiving operator to discharge his duties by not filling in the blank under the words "Sent by" and the blank left for the date while other operators did fill in such blanks; (11) that in some subsequent messages passing between the parties on the same day the same operator in New Orleans neglected to fill in the blank under the printed words "Sent by" and the blank left for the date, while other operators did fill in such blanks; (12) the failure on the part of the two operators to confirm the entire message rather than to limit the confirmation to the figures "20;" (13) that the record appearing on the Morsegraph in New Orleans which was located outside the office of defendant, disclosed the fact that the message as sent read "12.70" instead of "12.07" thus indicating that the operator at New York had forwarded and repeated the correct message and the mistake occurred in the Cotton Exchange office by reason of the error of the receiving operator there located, and that the tape record of the Morsegraph and the Morsegraph "Log" had been destroyed by the defendant after notice by plaintiffs to preserve the same.

Counsel for the defendant requested the court to separately charge the jury: (1) That the omission of the words "N. O.," (2) the substitution of "twenty" for "20," (3) the change from "Weld" to "Well," (4) the failure to transmit the number of words in the message, (5) the neglect to transmit the sending operator's signal, (6) the

omission to insert the hour of the receipt of the message, (7) the transposition of the figures " 0 " and " 7," was not proof of gross negligence on the part of the defendant. In each instance the trial justice in substance said: " I so charge you that alone would not be proof of gross negligence, but you must take that into consideration with all the other circumstances in arriving at a conclusion as to whether or not there was gross negligence," to which modified charges the counsel for the defendant excepted.

The court also charged the jury that it was not the duty of the defendant or its operators to confirm or repeat the message or any part of it, and the omission to confirm or repeat the message or any part of it was not gross negligence, but upon request of counsel for the plaintiffs did charge " that the question whether there was a duty to confirm or repeat, depends upon all the circumstances of the case, and is to be considered by the jury in connection with all the circumstances; and they are to determine whether the omission to do so in connection with these circumstances amounted to gross negligence."

The court was requested to and did charge " that the amount involved in the transaction between the plaintiffs and Ellis does not determine the degree of care the defendant should have used in the transmission of the message," but added: " That is true as a question of law; but you are to take into consideration the amount involved in this transaction as one of the elements which you are to consider in arriving at a conclusion as to whether or not due care was exercised in the transmission of the message," to which counsel for defendant excepted.

Counsel for the defendant took exception to the charge of the trial justice to the jury that they had a right to find gross negligence in the failure on the part of the defendant to exercise the care required under the circumstances, and asked the court to charge the jury that

failure to exercise the care required under the circumstances in this case was not gross negligence unless the failure to exercise such care was intentional or willful, which charge the court declined to make and an exception was taken by the counsel for the defendant.

The effect of the charge made by the trial justice was that numerous circumstances, no one of which would in and of itself constitute gross negligence for which the plaintiffs could recover against the defendant, might be considered by a jury upon the question of gross negligence.

Irrespective of the decisions of other jurisdictions the courts of this state have uniformly recognized a distinction between ordinary and gross negligence. In *First National Bank of Lyons* v. *Ocean National Bank* (60 N. Y. 278, 295), Judge ALLEN wrote: "* * * The term itself has been quarreled with, but it still has a place in the law, and must have, as long as the measure of liability implied by the term is recognized, and until some better term can be invented to give expression to it. * * * It has been defined to be the want of that ordinary diligence and care which a usually prudent man takes of his own property of the like description. * * *" In *Gurney* v. *Grand Trunk R. Co.* (37 N. Y. St. Rep. 155; affirmed on opinion there reported, 138 N. Y. 638) the complaint alleged that defendant received plaintiff as a passenger with his baggage, a trunk, which in addition to his wearing apparel contained samples of cutlery, that by reason of negligence of defendant the train was derailed and the contents of the trunk destroyed. Defendant interposed a demurrer. The question presented was as to the liability of defendant as a bailee where the property had been lost through its negligence, though defendant may not be liable upon its contract as carrier and, therefore, not an insurer. The General Term, VAN BRUNT, J., held that under the circumstances the defendant was liable only for gross negligence, and defined gross negligence as follows:

" Now, what is gross neglect ?  As contradistinguished from ordinary neglect, gross neglect means acts equivalent to wilful acts upon the part of the bailee by which the property is lost.  Where he wilfully refuses to take any precaution for the purpose of saving or caring for the property, the bailee is guilty of gross neglect.  It is not where he simply fails to use the ordinary care which a prudent person would exercise under the circumstances. "

The same rule was quoted and applied in *Cattaraugus Cutlery Co.* v. *Buffalo, R. & P. R. Co.* (24 App. Div. 267–270).

In *Halsted* v. *Postal Tel. Cable Co.* (193 N. Y. 293) the action was brought to recover damages for error of the defendant in the transmission of a telegram.  The message was written on a blank furnished by defendant, and as delivered read: " Delivered commencing about August fifteenth light narrow two eighth wide three eighth net. " As sent, the words " Deliveries " instead of " Delivered " and " two eighty " and " three eighty " in place of " two eighth " and " three eighth " were used.

This court, per GRAY, J., said (pp. 299, 300): " Whether such changes were the inadvertent, or mistaken, act of the receiving operator, or of any operator at the relay station, or whether they were the result of atmospheric disturbances * * * is not material.  * * *  However occurring, if by no wilful misconduct, a mere mistake, or error, in the transmission of a message would not warrant a jury in finding that there had been more than ordinary negligence. "

The cases cited recognize a distinction between ordinary and gross negligence, from which it may be said that gross negligence is the commission or omission of an act or duty owing by one person to a second party which discloses a failure to exercise slight diligence.  In other words, the act or omission must be of an aggravated character as distinguished from the failure to exercise ordinary care.

To justify a recovery in this case it was incumbent upon the plaintiffs to establish an absence of contributory negligence upon their part and gross neglect upon the part of the employees of defendant. The onus thus imposed was not satisfied by proof of error in the transmission of the message. It was incumbent on the plaintiffs to establish that the operators of the defendant were lacking in that degree of care to which we have called attention, and if the facts developed were as consistent with the exercise of slight care and diligence as with the absence of the same, plaintiffs would not be entitled to recover.

In view of the determination of this appeal we shall consider the facts relied upon by the plaintiffs.

Plaintiffs' business was that of cotton brokers and their transactions were principally upon the Cotton Exchange. Mr. Weld had asked for and obtained a quotation from New Orleans and wanted an oral order transmitted for the sale of 30,000 bales of cotton. The manager of defendant refused to accept an oral message and Mr. Weld immediately wrote the message in question to Ellis & Co. The commotion likely to be aroused on "Bureau Day" was as well, if not better, known to plaintiffs than to the operators of defendant. The plaintiffs accepted the terms of the contract for the forwarding of the message in and by which the measure of liability of defendant for errors was limited to the amount paid for transmission thereof. Notwithstanding the amount involved in the transaction, upwards of $1,000,000, plaintiffs did not order the message repeated, the additional expense of which was 30 cents, or contract to insure correctness, as provided for in connection with a repetition of the same, as they were privileged to do, but assumed the risk incident to the absence of slight care on the part of defendant.

Defendant was not required to provide extraordinary facilities to insure speed and accuracy in the transmission

and receipt of messages on "Bureau Day." . Gross neglect cannot be attributed to it for a failure so to do, or by reason of the amount of business likely to be transacted on a particular day.   By statute defendant is required to receive and transmit messages with impartiality and in the order in which they are received, subject to a penalty for a violation thereof.   The obligation thus imposed was one of continuous duty.   It was undisputed that the operators employed by defendant were skillful and that the appliances in use were of the highest grade.

The fact that the sending operator had never sent so large an order prior to that day and warned the receiving operator "Here comes a big order" may be next considered.   We may assume that the two operators had some information of the magnitude of the transaction, but as already stated the plaintiffs had knowledge equally with the operators.   Was such knowledge on the part of the operators evidence of the absence of slight care on their part ?   When the message was received at New Orleans the operator there asked the sending operator whether "20" was "twenty," to which the reply was sent "twenty."   Plaintiffs having placed the figures "20" in the message, a slight error would .readily make it read "2" or "200;" thus the operators confirmed the figures "20" by spelling "twenty," disclosing the exercise of reasonable care rather than absence of slight care.

As to the interval of time between the sending of the message and the delivery of the same, less than five minutes, it was asserted by counsel for the plaintiff that there was no claim based alone upon the delay.   The trial justice said to the jury that the only question as to the delay "is that is one circumstance which you should take into consideration with all the others in arriving at the conclusion as to whether or not there was gross negligence in the whole transmission of the message," to which counsel for the defendant excepted.   While delay in the delivery of a telegram may in some cases be considered upon

the question of negligence, it is for the court in the first instance to determine whether the delay was of such duration under the circumstances adduced upon the trial that negligence could be inferred. Under the facts in this case, the time occupied in transmitting the message, the taking of the same from the wire, the act of the receiving operator in asking the New York operator as to the figures "20," reply to the same, and the delivery to Mr. Henican within the time stated, made the question of delay in this case one of law which should have been determined in favor of the defendant.

The omission of "N. O.," the change of "20" to "twenty," "Mch" to "March" and "Weld" to "Well" were likewise immaterial. The message was sent by direct wire to the Cotton Exchange at New Orleans where plaintiffs intended the same to be sent. It was received and delivered to Mr. Henican, the representative of Ellis & Co., who testified that he understood from the same that he was to sell for the account of plaintiffs twenty thousand bales of cotton for delivery some time during March at the prevailing market price not under 12.07, and that he was not misled by any of the changes above recited or by reason of the signature "Well" for "Weld"—that he knew from whom the message came. The word "twenty" in place of the figures "20" and the change "Mch" to "March" would indicate the exercise of some care rather than the absence of the same on the part of the operator. Such circumstances are not of such character as tended to disclose an absence of slight care on the part of the defendant.

The failure to insert the date of the message in view of the actual delivery of the same within a few minutes cannot be said to be a matter of importance.

The failure of the receiving operator to fill in the blank under the words "Sent by," or to insert the hour of the receipt of the message or of the sending operator to transmit the number of words or his signal had no relation

whatever to the contractual relation existing between
the parties, but on the contrary was data for the use of
the company in its business.

A failure of defendant's operators to confirm the mes-
sage could not be considered as a circumstance on the
question of gross negligence. Plaintiffs contracted and
paid for the sending of an unrepeated message. The
defendant was not under obligation to repeat or confirm
the message (*i. e.*, "to make certain or sure, give new
assurances of truth or certainty to, put past doubt,
verify; confirmation supplies all defects, though that
which had been done was not valid at the beginning").
It had provided means for forwarding a repeated or con-
firmed telegram, but under the terms of the contract
with plaintiffs it was not required to repeat or confirm
the message.

That the Morsegraph at New Orleans disclosed that the
operator in New York had forwarded and repeated the
correct message and the error arose by the negligence of
the receiving operator together with the destruction of
the Morsegraph record and "Log book" is also urged
upon our consideration. Assuming the correctness of
this statement, the most favorable construction of the
same would disclose that the material error in the mes-
sage, *i. e.*, the change from "12.70" to "1207" arose in
the New Orleans exchange by some negligence on the
part of the operator there, but facts sufficient to disclose
a case of gross negligence upon his part were not
established.

Upon a former trial of this action the trial justice in
his charge to the jury referred to the importance of the
transaction, which he said might be considered in deter-
mining the degree of defendant's negligence, though the
amount involved did not determine the degree of care to
be exercised in the transmission of the message. Plain-
tiffs had a verdict and the judgment thereon was unani-
mously affirmed by the Appellate Division. Upon appeal

to this court the judgment was reversed for error of the trial justice in a refusal to charge the jury as requested by counsel for the defendant upon the subject of wagering contracts. In view of the unanimous affirmance in that case this court was not permitted to examine the facts. Consequently we are not bound by any charge made to the jury upon that trial in view of the non-unanimous decision by the Appellate Division on this appeal whereby we are permitted to examine the facts and determine the question of liability as one of law.

Whether or not a defendant was guilty of gross negligence has frequently been determined as a matter of law. (*French* v. *Buffalo, N. Y. & E. R. R. Co.*, 4 Keyes, 108; *Platt* v. *Richmond, Y. R. & C. R. R. Co.*, 108 N. Y. 358; *Kiley* v. *Western U. T. Co.*, 109 N. Y. 231; *Primrose* v. *Western Union Tel. Co.*, 154 U. S. 1; *Halsted* v. *Postal Tel.-Cable Co.*, 193 N. Y. 293.)

Did the plaintiffs make proof of facts from which the inference of gross negligence was the only one which could reasonably and fairly be drawn therefrom? We think they did not. What was the proximate cause, in the absence of which injury to plaintiffs would have been avoided? The several circumstances to which attention has been directed, assuming the message as received read as claimed with the exception of "12.70" reading "12.07" did not contribute to the injury. Had the message been transmitted under all of the surrounding circumstances and read "Sell twenty thousand March 12.70" it is evident that necessity for this action would never arise. Hence the error which was the proximate cause of the injury arose from the change of the figures "12.70" to "1207."

It was claimed by respondents and was so held by the trial justice that the several circumstances to which attention has been called disclosed a carelessness by defendant in the method of transacting business; therefore, a jury would be justified in drawing an inference therefrom that defendant was grossly negligent.

We have pointed out that a number of the circumstances relied upon are more consistent with due care on the part of the defendant than with the want of slight care. From such circumstances with others the jury was permitted to draw an inference of gross negligence, which as we view them was the only inference which fairly and reasonably could not be drawn therefrom.

The remaining independent acts and circumstances, in view of the contract made between the parties, a failure of plaintiffs to provide for a repeated or insured message, and the acts and knowledge of the plaintiffs, were not inconsistent with the exercise of slight care by defendant, and being equally consistent with the absence as with the existence of gross negligence failed to establish the essential facts necessary to a recovery. Had plaintiffs been able to disclose a lack of skill on the part of defendant's employees, or the use of appliances unsuited for the work undertaken, or that defendant had with knowledge of the incompetency of its operators retained them in its employ in the important work assigned them and furnished apparatus of an inferior grade, or facts of a like character, a different question would be presented for consideration. In the view we take of the evidence it was the duty of the trial justice to hold as matter of law that there was failure of evidence to show gross negligence.

The conclusions reached in this case do not tend to subject the public to the mercy of a telegraph company. While such a corporation is invested with certain privileges to be exercised by it for the public benefit, its liability must be measured by reasonable limitations. The opportunity is afforded to one doing business with it to protect himself from danger incident to error likely to arise. A failure to exercise the privilege extended at a small expense may result in a loss which might have been obviated by the injured party in the first instance. To hold that under the facts in this case gross negligence

had been established would enable a party, in nearly if not every case, to have a jury determine that a liability existed, when as a matter of fact only the absence of ordinary care was disclosed and thus render telegraph companies liable as insurers of the accuracy of messages notwithstanding their contracts, a principle not favored by the courts of this state.

Defendant urges that it was not the agent of the plaintiffs for the purpose of sending the message, consequently no liability exists in favor of plaintiffs. In view of the conclusion reached in this case it is not necessary to determine that question. Numerous decisions of other states upon the subject were called to our attention. We think the question was settled against the view of defendant in the case of *Halsted* v. *Postal Telegraph Cable Co.* (193 N. Y. 293, 303), where this court, Judge GRAY writing, adopted the rule laid down in *Ellis* v. *Am. Tel. Co.* (95 Mass. 226).

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; MILLER, J., not sitting.

Judgment reversed, etc.