**FARM BUREAU MUT. INS. CO. v. HAMMER et al.**

**No. 231.**

United States District Court
W. D. Virginia, Harrisonburg Division.
Feb. 9, 1949.

384

Wayt B. Timberlake, Jr., of Staunton, Va., for plaintiff.

Glenn W. Ruebush, of Harrisonburg, Va., and H. G. Muntzing, of Moorefield, W. Va., for defendants.

PAUL, Chief Judge.

This is an action for a declaratory judgment in which the plaintiff prays for an adjudication that it is not obligated to the payment of certain judgments which the defendants have obtained against Marvin Luther Wagner for personal injuries and death caused by a motor truck owned and operated by Wagner and upon which the plaintiff carried liability insurance, and prays that defendants be restrained from instituting suits against plaintiff for the collection of such judgments.

The factual background of the case as it appears from the pleadings and admissions of the parties is substantially as follows:

The plaintiff, which is engaged in the business of writing automobile liability insurance, on October 23, 1946, issued a policy covering a Chevrolet truck owned by Marvin Luther Wagner. Thereafter, on April 19, 1947, while the policy was in force, Wagner while operating the truck drove it into an automobile owned and operated by one Clarence Berlin Beverage and in which four other persons were passengers, these being Dennis Roscoe Beverage, James Edward Simmons, Dorothy Mae Helmick and Hilda Louise Gum, the latter an infant fifteen years of age. As a result of this collision Dennis Roscoe Beverage, James Edward Simmons and Dorothy Mae Helmick were killed and

Clarence Beverage and Hilda Louise Gum were seriously injured.

Thereafter suits for damages were instituted against Wagner by the personal representatives of the persons killed and by the two injured parties in the Circuit Court of Highland County, Virginia, in which county the collision took place. Under the terms of the policy the insurance company (plaintiff in the instant case) was obligated to defend in the name of the insured any suit brought against him, and accordingly counsel employed by the company entered his appearance in the state court as counsel for Wagner in the suits against him and entered pleas of the general issue. Before any further action in these suits was taken Wagner was indicted and tried on a charge of having wilfully and intentionally driven his truck into the automobile operated by Clarence Beverage and was convicted of murder in the second degree and sentenced to ten years in prison for having thereby caused the death of one of the victims (Dennis Beverage).

Following the conviction of Wagner counsel for the insurance company asked and was granted leave by the court to withdraw as counsel of record for Wagner in the actions for damages against him.

After withdrawal of the insurance company from defense of the damage suits against Wagner, those actions came on for trial in the state court. It appears from the records in them that Wagner offered no evidence in defense. In any event the jury in each case returned verdicts in substantial amounts against Wagner, on which judgments were entered. Executions against Wagner issued on these judgments were unsatisfied and thereupon the judgment creditors (defendants in the instant case) called upon the insurance company for payment of the judgments to the amount of its policy. This right, under these conditions, to proceed directly against the insurer is provided for by statute, Va. Code Sect. 4326a, and settled by the decisions of the Virginia courts. See Indemnity Ins. Co. v. Davis' Adm'r, 150 Va. 778, 143 S.E. 328. It is also provided for by the terms of the policy here involved.

The insurance company then instituted the present action in this court which, as previously noted, prays for a declaratory judgment to the effect that it is not obligated to payment of the judgments against Wagner and seeks to enjoin the defendants from instituting actions against the company to collect any part of the judgments. While the insurer could, if it chose, wait until suit was instituted against it and then offer any defense it might have, there is no doubt that, in order to avoid a multiplicity of suits, this is an appropriate situation to entertain an action for a declaratory judgment; and the defendants do not contest the propriety of this action.

The basis upon which the plaintiff seeks to be relieved of liability as an insurer is the contention that the injuries and deaths for which the judgments were recovered were not the results of an "accident" against which alone the policy insured, but were the results of a wilful, deliberate and intentional act on the part of Wagner in driving his truck into the automobile, which happening, it asserts, was not covered by the policy of insurance.

The defendants have filed their joint answer, the effect of which is to set up two primary defenses, in substance as follows:

1. They aver that the collision between the truck and the automobile was due to negligence on the part of Wagner and not to his intentional act; that the judgments against Wagner were based solely on pleadings which alleged negligence; that the evidence adduced at the trials was solely evidence of negligence and that the verdicts and judgments were based solely on negligence; and that the plaintiff is now precluded from asserting that the collision was intentionally caused by Wagner.

2. That irrespective of any intent on the part of Wagner to cause the collision, the deaths and injuries suffered by the occupants of the automobile were caused by an "accident" arising out of the ownership and use of the truck while it was insured by the plaintiff.

Briefly the defendants' answer contends (1) That the judgments having been obtained as the result of trials based solely on the theory of negligence the plaintiff cannot

now be heard to assert that the collision was intentional. (2) That regardless of whether the collision was intentional the occupants of the automobile were the victims of an "accident" against which the plaintiff had insured.

Based on these defenses the defendants have moved for summary judgment in their favor, supporting their motion with copies of the records in their suits against Wagner in the state court, duly certified by the clerk of that court. The purpose of these is not only to show the existence and amount of the judgments but to show that the cases were tried and the judgments obtained solely on the issue of negligence. The motion for summary judgment is rested on Rule 56(b) of the Rules of Civil Procedure, 28 U.S.C.A., as follows: "A party against whom a claim * * * is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

The plaintiff objects to the introduction or consideration of the state court records on the ground that the quoted rule limits the supporting material to *affidavits* and that court records are not affidavits and not such matter as is contemplated by the rule. The objection is, I am convinced, not well taken. The records offered are certified in the customary form by the clerk of the court under the seal of the court; and, in addition thereto are verified by the clerk under oath before a notary public. An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath. What we have here is the statement made by the clerk of the court and sworn to setting forth the fact that certain papers are true copies of records in his court. He does not purport to swear to the truth of the facts set out in the records or to the facts surrounding the collision. His statement is only as to what the court records are. The manner in which this fact is proffered would seem to come within even the most technical definition of what constitutes an affidavit. It would also seem logical that the matter shown by these records be considered on the present motion. The fact that the judgments were obtained as a result of the trial based on the alleged negligence of Wagner is offered as a defense to the present action. The plaintiff has not offered to, and probably cannot, dispute the fact. As a matter of defense there is no reason why its consideration should be deferred until a later stage of the case. For example, if the court were now to refuse to consider these records on this motion for summary judgment, the defendants would offer them in evidence at a trial and the court would then have to determine the same question now before it, namely, whether they were admissible and what their effect is as a matter of defense to the action. So long as the existence of the fact is conceded, the question of whether that fact does or does not constitute a valid defense can just as well be determined now as later.

I. This first matter of defense is based on the principle, variously phrased by the courts but well settled, to the effect that where an indemnitor has notice of and opportunity to defend an action against his indemnitee, he is bound by material facts established against the indemnitee, whether he appeared in defense of the action or not. See Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 330, 16 S.Ct. 564, 40 L.Ed. 712, citing Littleton v. Richardson, 34 N.H. 179, 66 Am.Dec. 759, 760, and City of Boston v. Worthington, 10 Gray, Mass. 496, 71 Am.Dec. 678, 679. See also Robbins v. City of Chicago, 4 Wall. 657, 672, 18 L.Ed. 427; Drennan v. Bunn, 124 Ill. 175, 16 N.E. 100, 7 Am.St.Rep. 354; Guaranty Title & Trust Corp. v. Virginia-Carolina Tie & Wood Co., 152 Va. 698, 703, 148 S.E. 815.

The above stated principle has been recognized as applicable in numerous cases involving insurance. B. Roth Tool Co. v. New Amsterdam Casualty Co., 8 Cir., 161 F. 709; International, etc., Co. v. Steil, 8 Cir., 30 F.2d 654; Ætna, etc., Co. v. Maxwell, 4 Cir., 39 F.2d 988, 991; Campbell v. American Fidelity, etc., Co., 212 N.C. 65, 192 S.E. 906, 908; Miller v. U. S. Fidelity, etc., Co., 291 Mass. 445, 197 N.E. 75; American Casualty Co. v. Brinsky, 51 Ohio App., 298, 200 N.E. 654.

The rule applies, of course, only when the matters and issues on which it is sought to hold the insurer (indemnitor) were those which were adjudicated in the action against the insured. See Ætna, etc., Ins. Co. v. Maxwell, 89 F.2d at page 991, where it is said: " * * *; and, if the insured wishes to rely upon the judgment, he must show that the very ground of liability upon which his suit is based was found to exist and was necessarily adjudicated in the prior action."

To the same effect see B. Roth Tool Co. v. New Amsterdam, etc., 161 F. at page 712.

For this reason many of the decided cases, while recognizing the validity of the principle involved, have declined to apply it in particular cases where it appeared that the grounds of liability asserted and determined in the original case were not the same as those on which liability of the insurer was predicated. B. Roth Tool Co. v. New Amsterdam, etc., supra; Jackson v. Maryland Casualty Co., 212 N.C. 546, 193 S.E. 703.

It becomes necessary then to inquire as to just what issues were adjudicated in the state court actions in which the judgments here involved were obtained. An examination of the records in those cases indicates that they were based solely on the theory of negligence on the part of Wagner. No transcript of the testimony is offered, but the allegations of the complaints (notices of motion) and the court's instructions are clearly based on negligence alone and there is no suggestion of any intentional act on the part of Wagner.

The actions were instituted by notice of motion, a form of complaint authorized by statute in Virginia, Code 1942, § 6046, and commonly used. The language of the notices of motion in the several cases is substantially the same. Without attempting to quote them in full, it is sufficient to say that they allege that the injury (or death) was due "directly and proximately to the fault, carelessness and negligence of the defendant". Certain alleged acts of negligence are then enumerated, as follows:

(1) That the defendant was driving his truck at "a high, excessive, unlawful and unsafe rate of speed".

(2) That the defendant "failed to keep a proper lookout ahead" so as to "avoid colliding with other vehicles being lawfully operated on the highway".

(3) That defendant "failed to keep your truck under proper control * * * so as to avoid a collision when overtaking and passing other automobiles * * *".

(4) That "when overtaking and attempting to pass said automobile * * * you failed to perform your duty of turning your truck to the left so as to pass safely * * *".

(5) That "you failed to apply your brakes when collision appeared, or should have appeared, imminent; and that you carelessly and negligently struck the rear of said automobile * * *; and that by reason of your said negligence and carelessness * * * I received", etc. (enumerating the injuries).

Similarly, the instructions of the court were based on negligence, a typical one being in the following words: "The Court instructs the Jury that every operator of a motor vehicle upon a public highway has a specific duty to keep a careful lookout ahead for other travelers upon the highway and to take proper care to avoid collision with any other such traveler. The operator of a motor vehicle has no right to assume that the road is clear of other cars making lawful use of the highway, but must, under all circumstances and all times, be vigilant and must anticipate and expect the presence of others, and if the operator of the motor vehicle fails to do so, he is guilty of negligence. The Court instructs the Jury, therefore, that if you find from a preponderance of the evidence that the defendant, Wagner, failed to keep a reasonable lookout and such failure was the proximate cause of the collision and resulting injury to Plaintiff, then you should find a verdict for the Plaintiff, Clarence Berlin Beverage, unless you further find from a preponderance of the evidence that Plaintiff was guilty of some act of negligence that caused or proximately contributed to the cause of the injury."

Other instructions dealt with other duties resting on the defendant, such as keeping his truck under proper control, driving to

the left of a car being passed from the rear, etc.; each of which duties it was charged Wagner had failed to observe. But in every instance the instruction was predicated only on the theory of a negligent act on the part of the defendant; and so far was this true that the court further instructed as to the possible contributory negligence of the plaintiffs.

■ From a consideration of these records of the trials it is apparent that the damage suits were instituted on charges of negligence on the part of Wagner, that they were tried on such charges, that the issues submitted to the jury were those of negligence and that the verdicts rendered were on findings that the defendant had been negligent. The fact that the court instructed on the matter of contributory negligence indicates that the cases were negligence cases only. Contributory negligence is not a defense to liability for an injury willfully and intentionally inflicted and such an instruction would have had no place in an action based on such an injury.

■ It must be taken that the judgments against the insured were the result of a determination that the injuries and deaths complained of were due to his negligence. The question then arises whether this determination bars the plaintiff in this action from denying its liability as insurer on the ground that the injuries arose not from negligence but from an intentional act on the part of the insured. I am of opinion that it does.

It would seem clear that an injury occasioned by negligence is different in kind from one intentionally inflicted. In the one case the wrong-doer is guilty only of carelessness; in the other he is guilty of purposeful and intentional wrong, a criminal act. There are many authorities which draw the distinction between ordinary negligence and "gross" negligence and between either of these and "wilful and wanton" conduct, and which recognize these differences in the determination of liability in particular cases. Aiken v. Holyoke St. Ry. 184 Mass. 269, 68 N.E. 238; Whitney v. First Nat. Bank, 55 Vt. 155, 45 Am.Rep. 598; Altman v. Aronson, 231 Mass. 588, 121 N.E. 505, 4 A.L.R. 1185; Weld v. Postal Telegraph Cable Co., 210 N.Y. 59, 103 N.E. 957; Cotter v. Boston, etc., R. Co., 237 Mass. 68, 129 N.E. 426; Parker v. Pennsylvania Co., 134 Ind. 673, 34 N.E. 504, 23 L.R.A. 552; Crosby v. Seaboard Air Line Ry., 81 S.C. 24, 61 S.E. 1064; Pittsburgh C. C., etc., Co. v. Ferrell, 39 Ind.App. 515, 78 N.E. 988, 989, where it is said: "Wilfulness and negligence are held inconsistent. Purpose or design is foreign to negligence." The distinction between negligence on the one hand and gross negligence or willful or wanton misconduct has recognition in the Virginia statutes, Va.Code, Sect. 2154(232). And see Thomas v. Snow, 162 Va. 654, 660, 174 S.E. 837, 839, where it is said: "Negligence conveys the idea of heedlessness, inattention, inadvertence; willfulness and wantonness convey the idea of purpose or design, actual or constructive."

Whatever may be the distinctions between different degrees of negligence or between them and willful or wanton misconduct, it is clear that the most marked distinction of all, the widest range of difference, is between ordinary negligence and purposeful, deliberate and intentional wrong. One excludes the other.

■■ As before pointed out, the damage suits were based on complaints which alleged negligence in its ordinary terms, and the judgments rested on a determination that Wagner had been guilty of the negligence charged. A liability resting on this basis is clearly one insured against. So far as I know the policy does not use the express word "negligence" in setting out the basis of its liability. It refers to injuries or death "caused by accident". But, as said in Rothman v. Metropolitan, etc., Co. 134, Ohio St. 241, 16 N.E.2d 417, 419, 117 A.L.R. 1169, 1171: "Nowhere in the policy do we find the word 'negligence' although we think it must be conceded that protection against liability on the ground of negligence is the principal purpose of such policy." And in Miller v. U. S. Fidelity & Casualty Co., Mass., 197 N.E. at page 77: "It is not contended and could not be contended successfully that bodily injury resulting from negligence is not 'accidentally sustained' as those words are used in the policy. (Citing cases.) It is common knowledge that protection against liability

on the ground of negligence is the principal purpose of such policies."

By the terms of the insurance policy here involved the insurer agreed (Coverage F) "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the *liability imposed upon him by law for damages* * * * because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, *caused by accident* and arising out of the * * * use of the automobile" (Emphasis added).

The insurer further bound itself to defend on behalf of the insured any suit against the insured arising out of the use of the automobile, "even if such suit is groundless, false or fraudulent."

It is to be noted that the agreement of the insurer was not to pay damages imposed for injuries which were *in fact* accidental, but to pay all sums which the insured should become obligated to pay by reason of *liability imposed upon him by law* for injuries caused by accident. And, again citing Miller v. U. S. Fidelity & Casualty Co., supra "The grounds on which liability has been imposed upon the insured are to be determined from an investigation into the matters decided in the action which established that liability and not from facts subsequently developed in an action by the insured against the insurer."

Again in this same case, Miller v. U. S. Fidelity & Casualty Co., the court, in referring to the agreement of the insurer to defend all suits against the insured even though they were "groundless, false and fraudulent", says: "The object of the policy is protection against law suits and legal liability. This object could not be attained if the insured were compelled to try over again in an action against the insurer the same issues upon which he has been found liable in the original action. Where an action against the insured is ostensibly within the terms of the policy, the insurer, whether it assumes the defense or refuses to assume it, is bound by the result of that action as to all matters therein decided which are material to recovery by the insured in an action on the policy."

In this connection expressions of the court in the recent Virginia case of London Guarantee etc. Co. v. White & Bros., 188 Va. 195, 49 S.E.2d 254, 255, 256, are pertinent. In this case the insurer had refused to defend a suit against the insured on the ground that the injury was not within the coverage of the policy. The insured settled the case by the payment of some amount and sued the insurer for reimbursement. In discussing the liability of the insurer, the court said in part:

"We agree that the insurance policy cast upon the defendant the duty to defend, initially at least, only if the suit against its insured stated a case covered by the policy.

*       *       *       *       *       *

"While the duty to defend is, in the first instance, to be determined by the allegations of the notice of motion, yet if those allegations leave it in doubt whether the case alleged is covered by the policy, the refusal of the insurance company to defend is at its own risk; and if it turns out on development of the facts that the case is covered by the policy, the insurance company is necessarily liable for breach of its covenant to defend."

The above is noticeably pertinent to the instant case in view of the fact that when the insurer entered pleas in defense of the damage suits in the state court and later withdrew from the defense, it knew that the notices of motions in those suits alleged negligence only and that recoveries were sought on the basis of injuries accidentally inflicted. In other words, the allegations of the complaints stated cases which were clearly within the coverage of the policy and which the insurer had covenanted to defend.

The case of Miller v. U. S. Fidelity & Casualty Co., 291 Mass. 445, 197 N.E. 75, 76, to which several citations have hereinbefore been made, is closely similar to the instant case both in fact and in legal principle. In that case a motorist, Miller, becoming angered at another driver named Link, deliberately and intentionally cut his car across the road in front of Link, causing the latter to lose control of his car, which overturned and injured him and another occupant of his car. The injured men sued Miller in a state court in Florida and Miller's insurer, although notified to do so, refused to defend the suits. Judgments

were obtained against Miller which he paid. He (Miller) then brought suit in Massachusetts to recover from his insurer on its indemnity contract. The latter defended on the ground that Miller's wrong-doing was intentional and its results were not within the coverage of the policy. The lower court (In Mass.) tried the case on the facts relating to the accident, found that Miller's act had been intentional, and absolved the insurer from liability on the ground urged by it.

In reversing the case, the Massachusetts appellate court said in part:

"We assume that if the facts found by the trial judge were to govern the result of the case, his ruling would have been right. * * *

"But the declarations in the Florida actions are based solely upon the ground that the plaintiffs in those actions were injured by the negligence of the plaintiff in this action. Nowhere is it stated that the injuries were caused by an assault or by an intentional or willful act."

After stating the principle that an indemnitor, after notice and opportunity to defend an action against the indemnitee, is bound by material facts established in the action against the indemnitee, the court then held that "the defendant could not disclaim liability in view of the fact that the declarations in the Florida cases alleged negligence only and the verdicts of the juries were based thereon."

To the argument that it was against public policy that a person should be insured against the consequences of his intentional wrong-doing, the court says: "The contract does not contemplate recovery by the plaintiff for his own intentional wrong. * * * He is allowed to recover only because it must be deemed to have been established by the court where the issue was first tried that he was negligent."

The case just cited is practically identical with the instant case in all aspects, except that here (1) the claim against the insurer is asserted, not by the insured (who has not paid the judgments), but by the judgment creditors; and (2) the insurer, instead of waiting to be sued and then offering its defense, has taken the initiative by offering its defense as the basis for a declaratory judgment. It is not seen how either of these facts alters in any way the application of the principles hereinbefore discussed.

These principles have been recognized and applied in various jurisdictions. A case illustrating the converse of Miller v. U. S. Fidelity & Casualty Co., supra, is that of American Casualty Co. v. Brinsky, 51 Ohio App., 298, 200 N.E. 654. In that case one Brinsky, injured in an automobile collision, brought suit in which he charged that the collision was due to the "willful" and "wanton" act of the defendants. The entry of judgment in Brinsky's favor recited that "defendants were guilty of willful and wanton conduct which directly and proximately caused plaintiff's injuries." Brinsky thereafter proceeded against the defendants' insurer to collect his judgment. The policy was the usual one insuring against injuries accidentally suffered. In reversing a recovery against the insurance company, the appellate court said in part: "A thing is willful when it is intentionally done. * * * In the instant case it has been adjudicated, determined, and found that the persons against whom this judgment was rendered, the insured, were guilty of willful conduct. * * *"

And then, adopting the language of a previously decided case, Commonwealth Cas. Co. v. Headers, 118 Ohio St. 429, 161 N.E. 278, the court adds: "The sole question of importance in the case is whether the injury inflicted was covered by the terms of the insurance policy. * * * The legal question presented is determinative of the whole case. The policy covers accidental injuries, and the term 'accidental' in this policy must be interpreted in the same manner as that term would be interpreted in any ordinary accident policy; that is to say, an injury or death does not occur by accident when it results from willful, intentional, personal violence inflicted by another."

The North Carolina case of Jackson v. Maryland Casualty Co., 212 N.C. 546, 193 S.E. 703, 704, is another directly in point, but in which the governing principle redounded to the advantage of the insurer. In that case the plaintiff in the original

case had charged that the acts of the insured in driving the automobile into him were *willful, wanton* and reckless and in *conscious* and criminal disregard of his rights and the plaintiff had testified to his belief that they were intentional. The automobile inflicting the injuries was covered by the usual policy insuring against liability imposed by law for injuries "accidentally" suffered. In a suit by the injured man against the insurer to collect the amount of his unsatisfied judgment, the insurer defended on the ground that the injury was intentionally inflicted and not within the coverage of the policy. The court upheld this defense, saying: "While, ordinarily, a liability insurer will not be permitted to set up, as a defense to an action based upon an unpaid judgment rendered against the insured on account of the negligent operation of the automobile referred to in the policy, that the injury was intentionally inflicted, that rule would not apply when the original complaint alleges as the cause of action a willful or intentional injury, and the evidence of the plaintiff shows that the injury was intentionally inflicted by the assured. The verdict should be interpreted in the light of the allegations of the complaint and the testimony at the trial."

Another case in point and in which the insurer benefitted by the principle involved in these cases is B. Roth Tool Co. v. New Amsterdam Casualty Co., 8 Cir., 161 F. 709. And it would appear from the digest references (the full opinions are not available to the court) that the principle was applied (as in the Miller case) to the benefit of the injured judgment creditor in the following New Jersey cases: Stefus v. London & Lancashire Indemnity Co., 117 N.J. L. 6, 166 A. 339; Jusiak v. Commercial Casualty Ins. Co., 169 A. 551, 11 N.J.Misc. 869. It will be noted that in all of the cited cases it was held that the liability or nonliability of the insurer depended on the issues tried in the original action—upon the ground upon which liability had been imposed upon the insured in the action against him. In the instant case the liability imposed upon the insured was, as shown by the records in the cases wherein it was imposed, for injuries occasioned by negligence—the very thing which the policy had insured against.

II. As previously stated, the defendants also assert in defense to the present action that it is immaterial whether the deaths and injuries inflicted by the insured's truck resulted from his negligence or from his intentional act; and that in either event they are to be deemed as caused by an accident arising out of the ownership and use of the insured truck.

In view of the conclusions previously stated, no consideration of this question seems necessary or pertinent. The only issues in the damage suits related to negligence and they must be taken as adjudications that the injuries resulted from this cause.

For the reasons hereinbefore set out, the relief prayed for by the plaintiff must be denied and the motion of the defendants for summary judgment must be granted. The motion goes no further than to require dismissal of the complaint and this will be done.