## UNITED STATES v. LYNCH.
### No. 10043.

United States Court of Appeals
Seventh Circuit.
March 7, 1950.

Rehearing Denied April 8, 1950.
Writ of Certiorari Denied June 5, 1950.
See 70 S.Ct. 1029.

C. Ballard Harrison, Hammond, Ind., for appellant.

Gilmore S. Haynie, U. S. Atty., Fort Wayne, Ind., James E. Keating, Asst. U. S. Atty., South Bend, Ind., Walter J. Keckich, Asst. U. S. Atty., Hammond, Ind., Noble F. Schlatter, Fort Wayne, Ind., Asst. U. S. Atty., for appellee.

Before KERNER, DUFFY, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal from a judgment rendered on a verdict of guilty upon an indictment containing 13 counts. The indictment charged misappropriation of the funds of a bankrupt estate by the agent of the debtor in possession; that that agent knowingly and fraudulently unlawfully transferred property of the estate to two general creditors in preference to those creditors and to the damage of other general creditors; and that he made a false oath with respect to schedules and reports filed by him during the course of the proceedings. The Government dismissed count 2; the jury returned a verdict of guilty as to counts 1, 4 to 10, and 12, and not guilty as to counts 3, 11, and 13. The court sentenced defendant to imprisonment for one year and a day on the first count, and suspended the imposition of sentence on the remaining counts with probation, and defendant was required to make restitution within three years after release from confinement.

Although no such claim was made at any time in the District Court, defendant now contends that the judgment is void because the indictment and judgment referred to

non-existent statutes. As a basis for this contention defendant points out that the indictment recites: "Counts 1 to 10, inc., Sec. 52(a), Title 18 U.S.C.A., Counts 11 to 13, incl., Sec. 52(b)(2), Title 18 U.S.C.A." In fact, there are no such sections in the old or new criminal code, and the charges were actually based on section 52(a) and 52(b)(2) of Title 11, U.S.C.A. which define offenses under the Bankruptcy Act, and section 152, Revised Title 18 U.S.C.A. The former section, 52 of Title 11, was in fact repealed by the Act of June 25, 1948, c. 645, § 21, 62 Stat. 862, effective September 1, 1948, the effective date of the New Criminal Code. The repealing section, however, provided further: "Any rights or liabilities now existing under such sections or parts thereof shall not be affected by this repeal." And the offenses charged in the indictment to violate § 52(a) and (b)(2) were carried over into the New Criminal Code as §§ 152 and 153.

A recitation of the statute involved is not a necessary part of an indictment and does not add to or weaken the legal effect of the charging allegations contained in the indictment. Williams v. United States, 168 U. S. 382, 18 S.Ct. 92, 42 L. Ed. 509; United States v. Hutcheson, 312 U. S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788; Thornburg v. United States, 10 Cir., 164 F.2d 37, 38. If the acts charged in the indictment constitute an offense under any statute or statutes of the United States, the omission of a reference to the statute violated or a misreference thereto in the caption of the indictment or in the body thereof does not render the indictment invalid. United States v. Doss, D.C., 66 F.Supp. 243, 246, affirmed, 5 Cir., 158 F.2d 95. And since the judgment stated that the "defendant is guilty as charged and convicted" the reference in the judgment to § 52(a) and (b)(2) of Title 18 is not grounds for reversal. See Rule 7(c), Federal Rules of Criminal Procedure, 18 U.S.C.A. Nothing in this record indicates that defendant's rights were in any manner prejudiced by the fact that the recitation quoted appeared below the caption of the indictment. On the contrary, the record discloses that on June 21, 1949, prior to trial, he had been advised that the correct citation of the statutes should read "Counts 1 to 10, inclusive, are in violation of Section 52(a), Title 11, U.S.C.A. with the exception of parts of count 3, which are in violation of Section 152 of Revised Title 18, U.S.C.A." and that "Counts 11 to 13 inclusive are in violation of Section 152 Revised Title 18 U.S.C.A." Moreover, the trial judge in his instructions to the jury referred to § 52(a) of Title 11 U.S.C.A. Hence we think no prejudicial error arose out of the incorrect reference in the indictment and on trial to the portions of the statute alleged to have been violated.

The first count is based on § 52(a), Title 11 U.S.C.A., now § 153 of the New Criminal Code: "Whoever knowingly and fraudulently appropriates to his own use * * * any property * * * belonging to the estate of a bankrupt which came into his charge as trustee * * * or other officer of the court, shall be fined not more than $5000 or imprisoned not more than five years, or both." It charged defendant with writing and cashing checks drawn on a bank and thereby knowingly and fraudulently appropriating to his own use the sum of $4,200, the property of the estate of a bankrupt, while defendant was agent of the debtor in possession. Insofar as we have been able to ascertain, the defense was that there was no evidence of any facts or circumstances surrounding the writing of checks; there was no evidence upon which the jury could find criminal intent; and that the bankrupt owed him an amount far in excess of $4,200. Defendant claimed that most of his efforts in managing the business and property of the bankrupt had to be concentrated on maintaining current operations and keeping it supplied with orders; that in an emergency of this nature it was natural that some mistakes would occur, and that if he was guilty of anything it was of negligence in failing to keep the expenditures within a reasonable amount, and in failing to secure and retain vouchers for such expenditures.

Defendant makes the point that for an act to be fraudulent in a bankruptcy proceeding there must be evidence of positive acts of intentional fraud. He asserts that no attempt was made to conceal the issu-

ance of the checks payable to himself, or to cash; they were recorded in the books of the bankrupt. He insists that the mere fact that he issued and cashed the checks "might have been a sufficient situation to render him liable civilly to account for and pay over the balance of funds drawn," but was no evidence that he committed any positive act of deliberate deception which amounted to affirmative, positive fraud, and contends that the trial judge erred in overruling his motion for judgment of acquittal.

■ According to this startling argument, if an employee of a bank dips his hand into the money till and takes therefrom money belonging to the bank and deposits in the cash box some memo of the fact that he has taken the money, when asked to account for the money, he may say, without more, "This is not a matter to be determined in a criminal case—sue me civilly." There is no merit to such an argument. It cannot be sustained consistently with reason.

■ We agree that the phrase "appropriates to his own use any property belonging to the estate of a bankrupt" when used in an indictment with the words "knowingly" and "fraudulently" excludes unintentional acts, and that in such a case, there must be evidence as in the practical affairs of life tends to produce belief and conviction in the minds of those to whom the evidence is addressed. Douchan v. United States, 6 Cir., 136 F.2d 144, 147. But it is not our function to determine guilt or innocence, and whether the evidence was sufficient to establish guilt beyond a reasonable doubt, or whether it was equally consistent with innocence or guilt, are matters exclusively for the jury, Kotteakos v. United States, 328 U. S. 750, 763, 66 S.Ct. 1239, 90 L.Ed. 1557; United States v. Sebo, 7 Cir., 101 F.2d 889; and United States v. Randall, 7 Cir., 164 F.2d 284, 286. And the verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. Glasser v. United States, 315 U. S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

■ In this case, the jury believed the witnesses for the Government and brought in a verdict of guilty which is amply supported by the evidence. Thus it established that on January 14, 1948, Hoosier State Paper Mills, Inc., filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., in the United States District Court for the Northern District of Indiana. The plan submitted to the court was not approved, and the debtor was adjudicated a bankrupt on August 12, 1948. On the day the petition for reorganization was filed, the court ordered that the debtor continue in possession of its property, and it was authorized to employ defendant as secretary and treasurer and to pay him as compensation for his services the sum of $62.50 per week. Defendant accepted such employment and became the agent of the debtor in possession.

After the debtor was adjudicated bankrupt the court ordered defendant to file a report covering the transactions of the debtor from January 14, 1948 to July 24, 1948, including a detailed statement of all receipts and disbursements. Defendant, on September 17, 1948, filed such a report and in it he listed all bank deposits made and all checks drawn thereon. From this report and other evidence adduced, it appeared that during the period from January 15 to July 23, 1948, defendant had issued checks payable to himself or to cash, totalling $7,982.33, on the account of the debtor at its bank at South Bend, Indiana. During this period of 28 weeks, defendant's salary at $62.50 per week amounted to $1,750, and when that amount plus checks for petty cash and allowances made for defendant's telephone, transportation, and other expenses was deducted, the overpayments amounted to $4,236.54, and defendant was ordered to pay that amount to the bankrupt. He did not comply with the order of the court. In this state of the record, we think the jury was justified in finding that defendant had knowingly and fraudulently appropriated to his own use property belonging to the estate of the bankrupt.

Count 4 charged that defendant, appointed as the agent of the debtor in possession on January 14, 1948, "knowingly and fraudulently unlawfully transferred property in the form of money" to a general

creditor, the Western Avenue Iron and Metal Company, by check dated January 20, 1948, a part of which was to be applied to a pre-existing debt. Thus the count charged a preferential payment to a general creditor by the agent in possession after his appointment as an officer of the court, and that such preferential payment was knowingly and fraudulently made. Counts 5, 6, 7, and 8 charge similar preferential payments by the agent in possession to the same general creditor, and counts 9 and 10, to a different general creditor, all after January 14, for application on debts existing prior to that date.

These counts are based on a different portion of § 52(a) Title 11 U.S.C.A., likewise now embodied in § 153 of the New Criminal Code: "Whoever knowingly and fraudulently * * * transfers any property * * * belonging to the estate of a bankrupt which came into his charge as trustee * * * or other officer of the court, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

The evidence as to the indebtedness to Western and payments thereon was that three accounts had been maintained, the first from 1945 until November 1947, the second, a Lynch Trustee account; from November 1947 to January 1948, and the third, a Lynch Receiver account, after January 1948. An accountant for Western testified that the first two accounts were in balance, and that several payments had been made on them after January 14, 1948. An agent of the F.B.I. testified that the records showed that payments were applied against the old account when there were amounts due on the current account, and that at a time when the entire current account had been paid up, a further payment of $1,200 was made for application on the Trustee's account. On cross-examination the witness stated that conversation with officials of the two preferred creditors had not disclosed any intimation of a deal between them and defendant or that they had given him anything to obtain the payments although the witness had asked the question.

There was evidence that the two accounts were very active and that the books of the debtor were not kept posted in such a way that anyone could ascertain on what invoices payments were being made just by inspecting them.

Defendant himself testified that Western was the principal supplier of the waste paper the debtor had to have in order to continue in business, and that in order to obtain the paper the debtor either had to pay for it on delivery or sometimes Western would state that it would make no further deliveries unless it received payments on account. He said that he did not know until the F.B.I. agent called his attention to it that any accounts prior to January 14, 1948 were paid.

This is, in outline, a statement of all the evidence with respect to the alleged fraudulent transfers. Thus, all that was positively shown was that the payments were made. That the defendant acted very carelessly and negligently in making them is beyond doubt. But we think that carelessness and negligence alone, even on the part of an officer of the court, are not enough to prove the offense charged here.

■ Essential ingredients of the offense are that it be done knowingly and fraudulently. 2 Collier on Bankruptcy (14th Ed.), p. 1140; United States v. Yasser, 3 Cir., 114 F.2d 558; Klein v. Powell, 3 Cir., 174 F. 640; United States v. Comstock, C.C., 162 F. 415. In other words, in order to render the payments on which the counts were based offenses under the Act, something more had to be proved than the mere fact that they were made. While there was, perhaps, sufficient to enable the jury to infer scienter from the facts and circumstances shown, we think there was nothing from which it could infer fraud. We are, therefore, convinced that the evidence was insufficient to support a verdict of guilt on counts 4 to 10, and that defendant's motion for acquittal should have been sustained as to those counts.

■ As already noted, count 12 charged defendant with knowingly and fraudulently making a false oath. Defendant makes the point that under § 152 of the Code, the proofs must contain all the elements of perjury, Willoughby v. Jamison, 8 Cir., 103 F.2d 821, and where there is no evidence

from which the jury could infer that the defendant did not believe the report subscribed under oath to be true at the time the oath was made, the verdict cannot be sustained. United States v. Richards, D.C., 149 F. 443. But this court has held that proof of false oath in bankruptcy need not contain all of the elements of perjury, Goetz v. United States, 7 Cir., '59 F.2d 511, 512, and if defendant's report was knowingly false at the time he made it, the crime charged had been completed, United States v. Margolis, 3 Cir., 138 F.2d 1002.

In this case defendant admits that he knew that he had subscribed the report (Government Exhibit 1-H) and that the notary public affixed her signature and seal, but he insists that he made no attempt to swear that the statements were true, and that he requested the privilege of filing a supplemental report.

 The record discloses that defendant raised no objection to the introduction of the report, which shows on its face that it was subscribed and sworn to before a notary public. In such a situation, a presumption arises from the paper itself that defendant took the oath and that the notary public, in the performance of her duty, administered it, Hardy v. United States, 5 Cir., 22 F.2d 153, 154, and the defendant may not now be heard to say that the report does not constitute prima facie evidence of the facts there recorded, Cohen v. United States, 3 Cir., 36 F.2d 461, 462. It also appears that defendant on cross-examination, was asked: "A. Isn't it true, Mr. Lynch, that in your report you took credit for $1,250 in salary and took that twice in your report. A. Yes"; and that in the report defendant represented that he had expended in advancements to himself $5,897.20, whereas the evidence was that the money he had advanced to himself was actually $7,159.70, and there was evidence that the report was 'false in that it set up a total shortage in his accounts of $6,823.93. Under these circumstances it was for the jury to determine whether defendant knowingly and fraudulently made a false oath in his report.

Defendant has made a number of other arguments or contentions, such as that he was not an officer of the court, and that bank deposits are not money. These we have considered. There is no merit in these contentions, hence they need not be discussed.

The judgment of conviction as to counts 1 and 12 is affirmed, and reversed as to counts 4 to 10 inclusive.