**UNITED STATES of America,**
**Appellee,**

v.

**Leo KAUFMAN, Defendant-Appellant.**

**No. 111, Docket 71–1423.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 17, 1971.

Decided Dec. 3, 1971.

Feinberg, Circuit Judge, dissented and filed opinion.

Thomas Day Edwards, New York City, for appellant.

James T. B. Tripp, Asst. U. S. Atty., Southern District of New York (Whitney North Seymour, Jr., U. S. Atty., and Jay S. Horowitz, Asst. U. S. Atty., Southern District of New York, on the brief), for appellee.

Before KAUFMAN, ANDERSON and FEINBERG, Circuit Judges.

ANDERSON, Circuit Judge:

In 1968, Leo Kaufman was employed as a process server for one Max Shenghit, an attorney engaged in collection work for large New York City retail stores and other commercial companies. While in Shenghit's service, Kaufman signed numerous "affidavits" of non-military service, which Shenghit subsequently filed in various courts in actions brought on behalf of his clients to comply with 50 App. U.S.C. § 520(1) of the Soldiers' and Sailors' Civil Relief Act, which provides:

> "In any action or proceeding commenced in any court, if there shall be a default of any appearance by the defendant, the plaintiff, before entering judgment shall file in the court an affidavit setting forth facts showing that the defendant is not in military service. . . ."

In these affidavits, Kaufman represented that he had personally spoken to the defaulting defendants and had determined that they were not in the military service. The appellant conceded at trial that these conversations never took place. In the course of the customary routine of the office, a fellow employee delivered the non-military affidavits, often in large batches, to Kaufman's desk for his signature; some contained the name of the subject defendant and others left a blank where the name was supposed to be. In either event Kaufman signed them all. When he finished, he returned the documents to the clerk from whom he had received them, or he took them personally to a notary public in the office. The affidavits were then stamped and signed by the notary, but, according to Kaufman and one of the office notaries who testified at the trial, no oath was ever administered even though each document concluded with the words "Sworn to before me this day . . . ."

After an eight-day jury trial Kaufman was found guilty on 90 counts of violating the Soldiers' and Sailors' Civil Relief Act, 50 App. U.S.C. § 520(2),[1] which makes it a crime for any person to "make or use an affidavit required under this section . . . knowing it to be false . . . ."

The defendant claims that he was improperly convicted under the statute because, although the documents he signed appeared to be affidavits, there was no proof that he swore to the truthfulness of the statements which he signed. He argues that because they were not written statements under oath, they did not come within any accepted definition of the word "affidavit" and that therefore there was no violation of the statute. Even if it is assumed, however, that Kaufman did not actually swear to the written statements, we conclude that as a matter of statutory construction, on the facts before us, the appellant violated the provisions of § 520(2).

The purpose of the Soldiers' and Sailors' Civil Relief Act is to prevent default judgments from being entered against members of the armed services

---

1. The jury acquitted him on 23 counts charging mail fraud under 18 U.S.C. § 1341.

in circumstances where they might be unable to appear and defend themselves, see In re Realty Associates Securities Corp., 53 F.Supp. 1015, 1016 (E.D.N.Y. 1944). The Act requires that, before any plaintiff can obtain a default judgment, he must file an affidavit with the court stating that the individual being sued is not in the military service. The Act also provides penalties for those who mislead or seek to mislead courts into granting default judgments on the basis of false non-military affidavits.

■ The instruments signed by Kaufman represented that they contained true statements, sworn to as such by him before a subscribing notary public. On their faces they appeared for all intents and purposes to be fully and completely qualified as proper affidavits filed in compliance with the terms of the statute. Under these circumstances—when a written instrument appears on its face to be an affidavit—there is a presumption that the affiant swore to the truthfulness of the statements contained therein, United States v. Abraham, 347 F.2d 395, 397 (7 Cir. 1965); United States v. Lynch, 180 F.2d 696, 701 (7 Cir.), cert. denied, 339 U.S. 981, 70 S.Ct. 1029, 94 L.Ed. 1385 (1950); Hardy v. United States, 22 F.2d 153 (5 Cir. 1927). In the present case the documents were found by the courts to which they were presented to be affidavits, and they were unquestionably effective to show that 50 App.U.S.C. § 520(1) had been complied with and to obtain a default judgment against certain defendants in those courts. They therefore were effective in perpetrating the precise acts which § 520(1) and (2) were designed to prevent. We conclude therefore that they were affidavits for the purpose of § 520 (2).

■ The appellant concedes that the affidavits were false in representing that he had talked with certain persons about their military status when in truth he had not, and presumably that, if the affidavits had in all other respects been true, he would have been properly found guilty. But, he points out, there was fortunately another huge falsification, superimposed upon the first, in that the written statement represented that it was sworn to when in fact it had not been. This, he asserts, proves that there was no real affidavit and shows that he was unlawfully charged. But the rule that penal statutes should be strictly interpreted is meant only to protect the defendant from unfair surprise. Certainly Kaufman, who testified that he knew he was signing documents which purported to be affidavits and that he expected the New York courts to give the documents the legal effect of affidavits, is hardly in a position to persuade this court that he was unfairly surprised by the district court's construction. The warning of the statute is fair and the line drawn by it is clear. McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931). It is difficult to suppose that a criminal would even hope, let alone believe, that if he induced a court to rely upon and use a written statement which he had represented to be under oath but which he knew was not, he could not be lawfully charged under the statute; nor did Congress intend that the whole thrust and purpose of the statute could be rendered nugatory by so simple an expedient. The fact that another Congress has in an unrelated statute proscribed use of "a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper or writing purporting to be such" concerning representations made in certain insurance applications, 38 U.S.C. § 787, creates no inference that only by the use of similar wording could Kaufman have been chargeable under 50 App. U.S.C. § 520(1) and (2). The former statute was enacted for an entirely different purpose and has no bearing on the construction to be given the latter.

The appellant has cited certain cases for the proposition that a written statement must actually be sworn to in order to qualify it as an affidavit, but those cases have no relevance here. They are distinguishable from the present case because they were concerned with the pro-

bative value of a written statement under oath as opposed to one that was not; the statements at issue were not in the accepted form of affidavits nor did they, on their faces, represent that they had been sworn to. For example, in Bradley v. United States, 218 F.2d 657, 659, n. 1 (9 Cir. 1954), rev'd, 348 U.S. 967, 75 S.Ct. 532, 99 L.Ed. 754 (1955), the court decided that a written statement not given under oath had less evidentiary value in a Selective Service hearing than an affidavit would have had, and in Williams v. Pierce County Bd. of Com'rs, 267 F.2d 866 (9 Cir. 1959), the court was of the opinion that a person should be allowed to proceed in *forma pauperis* only if he swore to the fact of his poverty. Of course, in any case, from the probative value point of view, a written statement purporting to have been made under oath, but not sworn to in fact, is worth no more than an unsworn statement.

The present case, however, concerns the construction of a statute forbidding false and fraudulent affidavits as applied to a situation in which an affidavit, though in the usually accepted form and regular on its face, represented that it had been sworn to when in fact it had not. This was part and parcel of the very falsification and fraud at which the statute was directed. To adopt the appellant's strict construction theory would place technicalities above common sense and unnecessarily frustrate the carrying out of the plain intent of Congress. Bell v. United States, 349 U.S. 81, 83–84, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

The appellant's second claim is that the trial court erred in permitting the Government to introduce evidence of a prior crime he had committed but for which he had not been convicted. During the direct examination of the defendant, Kaufman admitted that he had signed the non-military affidavits and that he knew that they stated that the party was not in military service, but he steadfastly denied knowing that the statements were false or that he intended

to deceive anyone. Kaufman attempted to portray himself as an unsophisticated employee who was merely doing what he was told to do when he signed the affidavits. At the conclusion of the direct examination, therefore, Kaufman's knowledge and intent were crucial issues in the case.

During cross-examination, Kaufman stated that he had incurred expenses, although infrequently, for witness and filing fees in the course of serving papers, for which he had been reimbursed. When asked whether he had claimed deductions for such business expenses in his tax returns, he said that he "didn't think so," and explained that the returns were prepared by a friend who "deducted the things he was supposed to deduct." At this point, the Government offered Kaufman's 1968 tax return as an exhibit and defense counsel objected. The Government justified further inquiry into the return as an attack upon the defendant's credibility and to show "what kind of documents and papers this witness is willing to put his signature on." The judge admitted the evidence and the Government questioned Kaufman briefly about a sizeable business deduction he had taken for "witness and filing fees." The defendant admitted signing the tax return and conceded that the deduction was erroneous, but explained that he had given the return to a trusted friend to prepare and had never examined the return before it was filed.

■ The defendant contends that this cross-examination as to another criminal act was improper and requires reversal. We disagree. The evidence of a false statement in the tax return was proper under the well-established rule that "evidence of similar acts, including other crimes, is admissible when it is substantially relevant for a purpose other than merely to show defendant's criminal character or disposition," *i. e.*, in this case, to show knowledge and intent. United States v. Deaton, 381 F.2d 114, 117 (2 Cir. 1967). See *e. g.*, United States v. Keilly, 445 F.2d 1285, 1288 (2 Cir. 1971); United States v. Johnson,

382 F.2d 280, 281 (2 Cir. 1967); United States v. Knohl, 379 F.2d 427, 438–439 (2 Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); United States v. Ross, 321 F.2d 61, 67 (2 Cir.), cert. denied, 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963). *See also,* McCormick, Evidence § 157, at 329 (1954). Evidence that the defendant had signed false legal documents relating to his own personal affairs was relevant to rebut his testimony in which he characterized himself as an unwitting employee beguiled by his superiors into unknowingly signing false affidavits. *See Ross, supra,* 321 F.2d at 67. In this case, tax fraud constituted a "similar act." The basic element of both consisted of signing documents knowing them to contain false statements.

■ As the nature or circumstances of the evidence of other criminal activity, though relevant, may place very strong emphasis on the evil nature of the accused and persuasively suggest that he was exactly the kind of person who would commit the offense charged, the trial court must weigh the relevant factors to determine the amount of possible prejudice that may be involved. The rule which the court must apply is that evidence of another crime is admissible unless the likelihood of prejudice outweighs its probative value. *See Deaton, supra,* 381 F.2d at 117. The evidence at issue here, while damaging to defendant's case, was not inflammatory. The fact that a person claims an improper deduction in his income tax return is not the sort of misconduct that ordinarily arouses the irrational passions of the jury, *cf.* United States v. Provoo, 215 F.2d 531, 537 (2 Cir. 1954). Moreover, the Government did not offer the evidence in its main case on an issue not yet pressed by the defendant, *see* United States v. Byrd, 352 F.2d 570, 575 (2 Cir. 1965). *See also Johnson, supra,* 382 F.2d at 281. On the contrary, the defendant himself through his testimony made his state of mind the crucial issue in the case, *see Ross, supra,* 321 F.2d at 67. Furthermore, the evidence was not cumulative; no other evidence of tax fraud or any other criminal conduct was either offered or admitted, *see Byrd, supra,* 352 F.2d at 574, nor did the Government overemphasize the defendant's prior misdeed. The trial court did not abuse its discretion in deciding that the probative value of the evidence outweighed its prejudicial character.

■ The defendant relies heavily on United States v. Semensohn, 421 F.2d 1206 (2 Cir. 1970), which was reversed because the prosecutor asked the defendant on cross-examination: "Now, you were convicted of grand larceny, weren't you?" when, in fact, he had pleaded guilty only to attempted grand larceny, had not yet been sentenced, and could still seek to withdraw his guilty plea. In that case the defendant was charged with evasion of military service, and the sole purpose of the prosecutor's question was to attack his credibility by showing his bad character. The alleged larceny conviction had no relationship to or similarity with the charge of draft evasion. Impeachment of credibility by evidence of past criminal offenses can only be shown by proof of a conviction of a felony or crimes involving moral turpitude. *Provoo, supra,* 215 F.2d at 536; United States v. Palumbo, 401 F.2d 270, 273 (2 Cir. 1968).

■ But the holding in *Semensohn* is not determinative of the evidentiary issue in the present case. Although in offering the evidence concerning Kaufman's signing of his partly false tax return, the Government claimed that the purpose of it was to impeach his credibility, it clearly was not admissible for that purpose; but the Government also offered it "to show what kind of documents and papers this witness is willing to put his signature on." Though inartistically phrased, this was sufficient to claim it as a past similar act to show knowledge and intent. The trial court admitted the exhibit and permitted the cross-examination which related to it. As there was a proper ground for its admissibility, there is no error.

The judgments of conviction are affirmed.

FEINBERG, Circuit Judge (dissenting):

The Soldiers' and Sailors' Civil Relief Act states with perhaps unfortunate precision that it shall be a misdemeanor for any person to "make or use an *affidavit* required under this section * * * knowing it to be false * * *." 50 U.S.C. App. § 520(2) (Emphasis added). I dissent from the holding that the word "affidavit," appearing in this criminal statute, can be construed to mean an unsworn statement. Whether one looks to the dictionaries [1] or to the cases,[2] an oath is an essential characteristic of an affidavit. While we should not make a fortress out of the dictionary, see Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.) (L. Hand, J.), aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945), neither should we ignore the terms of a criminal statute. To uphold defendant Leo Kaufman's conviction we must redraft the statute to forbid the false making not only of an affidavit, but also of a document purporting to be an affidavit. To do so, in my opinion, is beyond our powers.

Given the absence of any legislative history precisely covering the issue raised by this case,[3] we can only speculate about what Congress would have done had it focused on the question. Perhaps Congress would have used more expansive language as it has in other statutes, e. g., 38 U.S.C. § 787, which proscribes "a false or fraudulent affidavit * * * or *writing purporting to be such*." (Emphasis added.) Or perhaps, as defendant suggests, Congress would have been content to prohibit only false "affidavits," or sworn statements, leaving conduct such as we have here to be covered by state criminal laws, e. g., N.Y. Executive Law § 135–a (McKinney's Consol.Laws, c. 18, 1951), which punishes notaries for performing their duties fraudulently. Our role, however, is not to determine which course may have appealed most to Congress, but to determine whether the statute as written can be fairly said to encompass this case. Cf. McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931). I reluctantly conclude that it cannot.

The Government, but happily not the majority opinion, relies upon United States v. Wiseman, 445 F.2d 792 (2d Cir.

---

1. A sworn statement in writing made esp. under oath or on affirmation before an authorized magistrate or officer; *specif:* such a statement under oath made ex parte and without cross-examination. Webster's Third New International Dictionary (1961).

   A written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath. . . . A statement or declaration reduced to writing, and sworn to or affirmed before some officer who has authority to administer an oath or affirmation. Black's Law Dictionary (4th ed. 1957). See also Ballentine's Law Dictionary (3d ed. 1969).

2. See, e. g., Robbins v. United States, 345 F.2d 930, 932 (9th Cir. 1965); Williams v. Pierce County Bd. of Commissioners, 267 F.2d 866, 867 (9th Cir. 1959); Johnston Broadcasting Co. v. FCC, 85 U.S.App.D.C. 40, 175 F.2d 351, 354 (1949); Farm Bureau Mut. Ins. Co. v. Hammer, 83 F.Supp. 383, 386 (W.D. Va.), rev'd on other grounds, 177 F.2d 793 (4th Cir. 1949), cert. denied, Beverage v. Farm Bureau Mut. Ins. Co., 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339 (1950).

3. In 1960 Congress amended the statute to provide that, where state law permits, a written statement certified to be true under penalty of perjury may be filed with the court in lieu of an affidavit. Defendant argues that this amendment "made it even clearer that the word 'affidavit' must be given its normal meaning, and that the crime it defines requires that perjury be committed." Appellant's Brief at 10. This legislative history lends a measure of support to defendant's position.

1971), for the novel proposition that Kaufman should be "estopped" from denying that he made valid affidavits because he admitted knowing that the documents he signed purported to be true affidavits. That case involved a prosecution under 18 U.S.C. § 242, which states:

> Whoever, under color of any law * * * willfully subjects any inhibitant of any State * * * to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year . . . .

The indictment in *Wiseman* charged that defendants had deprived various persons of their rights by routinely signing blank and false "affidavits of service." We there noted that although the documents may not have been "affidavits," presumably because no oath was administered, defendants were estopped from claiming that a variance existed between the facts and the indictment. 445 F.2d at 796 n. 4. We in no way indicated that the estoppel concept was applicable to a case where, as here, the statutory language provides that the making of an affidavit is a key element of the crime.

Accordingly, I conclude that the conviction below should be reversed. But, since the case was tried on the theory that an oath was not an essential element of the offenses charged under the Soldiers' and Sailors' Civil Relief Act,[4] I would not direct dismissal of the indictment but would leave open the possibility of a new trial consistent with this opinion.

---

4. Since the trial court refused defendant's request that the jury be charged that an oath was an essential element of the offense, no finding was made on the issue.