## White v. Board of Regents of Normal School, District No. 2.

(Decided December 15, 1911.)

## Appeal from Warren Circuit Court.

1. New Trials—Jurors.—The fact that a juror is a third or fourth cousin of one of the members of an incorporated board that is a party to an action, will not entitle the losing party to a new trial, although he did not discover the relationship until after the verdict.

2. Same—Finding of a Properly Instructed Jury.—This court will not disturb the finding of a properly instructed jury, where there is sufficient evidence to support the verdict.

GUY H. HERNDON, RODES & WALLACE and W. R. GARDNER for appellant.

SIMS & RODES, WRIGHT & McELROY for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In the spring of 1909, the appellant, a teacher of music, entered into a contract with the President of the appellee Normal School to act as director of the school of music at the institution for the school year of 1909-10, to begin in September 1909, for the agreed compensation of Eighteen Hundred Dollars.   This controversy grows out of the difference between the appellant and the appellees as to whether under the contract appellant was to conduct the musical department for forty or forty-six weeks. The appellant insists that his contract was for a forty weeks session, while appellees contend that it was for a forty-six weeks session. It is conceded that appellant only performed the duties of the place for forty weeks, and under their construction of the contract the appellees deducted from the Eighteen Hundred Dollars, $234.80, on account of the failure of appellant

to conduct the school forty-six weeks. Thereupon appellant brought this action to recover the amount stated, upon the theory that the whole contract price was earned when he rendered services for forty weeks. In the lower court the case was decided adversely to plaintiff, and he appeals.

The whole controversy between these parties turns upon the question as to whether appellant under his contract was obliged to conduct the musical department for forty or forty-six weeks. There is no charge of bad faith or intentional desire on the part of either of the litigants to misconstrue the contract or take any unfair advantage of the other. They simply differ as to the terms of the contract. The evidence shows that appellant, who is a resident of New York, secured the employment through a teachers' agency at Nashville, Tennessee, and as a result of correspondence between the parties and the Tennessee agency, appellant went to Bowling Green, Kentucky in March 1909 and had a series of conversations with H. H. Cherry, President of the Board of Regents, and Dr. Kinneman, Dean of the School, in which the salary, the period of employment, the duties to be performed, and other matters relevant to the service were freely discussed. Appellant testifies that in these conversations, he told Mr. Cherry that he would accept the employment at a salary of Two Thousand Dollars, and also informed him that he had a contract to teach a three-weeks summer school in Chicago. The contract was not closed during these interviews, but in April, Cherry telegraphed appellant that they would pay "Eighteen Hundred Dollars annually," and this proposition was accepted. Cherry testifies that in the conversations had with appellant in March, it was expressly understood and agreed that if the contract was entered into, the term of service would be forty-six weeks, as appellant would be expected to continue the musical department for six weeks after the regular term of forty weeks expired; and he is strongly supported in this by Dr. Kinneman, who says that he also told appellant that he would be expected to conduct this department for forty-six weeks. It also appears that the manager of the teachers' agency at Nashville wrote a letter to appellant in reference to this employment, in which he said:

"I know that Prof. Cherry is considering favorably

your application, and the fact that you have heard nothing definite from him, as I wrote you, is evidence that he is considering your application favorably. Prof Cherry tells me that he will either offer you $1,800.00 or $2,-000.00, for forty-six weeks work. * * *"

The appellant denies that he understood from any source or that it was contemplated in the conversations had with Cherry and Kinneman that the term should be forty-six weeks, declaring that they were fully advised by him that he could not do any summer work as he was already employed elsewhere.

In January, 1910 the appellant wrote to Prof. Cherry, this letter:

"I hereby respectfully tender my resignation as head of the school music in the Western Kentucky State Normal School, and ask that I be relieved of the duties connected with that position at the end of the present academic year."

Upon receipt of this communication, his resignation was accepted by the board.

Appellant's version of this letter is that he wrote it so that the board of regents might know that he would not teach longer than the single term for which he was employed, and that having in mind that his contract only obligated him to teach forty weeks, he meant he would resign this place at the end of the forty weeks. After this resignation was accepted, the board of regents employed another teacher to take the place of appellant during the six weeks term. It is further shown in the evidence that it was customary for the school at the close of what might be called the school year of forty weeks to conduct a summer school of six weeks, and that all of the teachers were expected to remain during these six weeks.

Serious complaint is made of the failure of the trial court to permit appellant to file a reply, setting up that when he learned there was a misunderstanding as to the term of his employment, he tendered his services for the six weeks school and was able and willing to discharge the usual duties of his position for the six weeks in controversy, and to show by evidence that the board of regents refused to permit him to do so. The reason assigned by the board for declining to permit appellant to conduct the department for the summer session of six weeks was that after his resignation had been tendered

and accepted, they employed another teacher to take his place for the six weeks term. It does not seem to us that the failure to allow this amended pleading to be filed or to permit appellant to rely on its averments as support-ing his right of recovery was error. When appellant tendered his resignation to take effect at the expiration of forty weeks, and it was accepted, that ended the contract relations between the parties, and the board of regents was not thereafter under any contract obligation to continue the appellant's employment for the summer school. Nor was appellant in a position to demand that they should do so. The trial court instructed the jury as follows:

"If the jury believe from the evidence that the contract between plaintiff White and the defendant was for the period of forty weeks as claimed by plaintiff, they will find for the plaintiff the amount of balance due him on his salary, $234.80; but if the jury believe from the evidence that said contract was to include the summer term of six weeks in addition to the forty weeks, then they will find for the defendant."

This instruction presented accurately and aptly the whole law of the case, and submitted to the jury the only issue between the parties.

It is said that there was some incompetent evidence admitted but a careful reading of the record satisfies us that no evidence was permitted to go to the jury that was calculated to or did prejudice the rights of appellant. Both sides were properly allowed to bring before the jury every fact and circumstance that served to support their respective contentions. In its last analysis, the issue resolved itself into the question whether the jury would accept the testimony of appellant or that of Cherry and Kinneman, and they chose to believe, as they had the right to do, the statements made by the latter.

A question is also made that as one of the jurors was a third or fourth cousin of J. Whit Potter, one of the members of the board of regents, and as this fact was not discovered until after the trial, a new trial should have been granted on this ground. We do not think so. The Normal School is a State institution, and although Potter may have had some personal interest in the matter, he was not a party to the action, and certainly had no financial interest in the result of the litigation. How-

ever the case was decided, it would not benefit or cost him anything.

Upon the whole case, we see no reason for disturbing the judgment of the lower court, and it is affirmed.