RAFAEL RIVERA VALIENTE, Petitioner and Appellant, *v.* JAIME BENÍTEZ, CHANCELLOR OF THE UNIVERSITY OF PUERTO RICO, Respondent and Appellee.

No. 10472. Argued January 8, 1952.—Decided April 25, 1952.

362

*Enrique Báez García* for appellant. *Saldaña, Sánchez & Trías, Sarah Torres Peralta* and *C. Morales, Jr.,* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

Rafael Rivera Valiente filed in the district court a petition for mandamus against Jaime Benítez, Chancellor of the University of Puerto Rico, to compel him to restore Rivera to his post as a member of the faculty of the University of Puerto Rico. The Chancellor filed a motion which prayed in the alternative for dismissal or summary judgment. The lower court entered a summary judgment in favor of the Chancellor from which Rivera has appealed to this Court.

The first assignment is that the district court erred in holding that there was no genuine issue as to any material fact in this case and that the respondent was entitled to judgment as a matter of law. We begin by stating the nature of the case and the role of the courts in the controversy.

For many years Rivera was a professor of biology in the College of Agriculture and Mechanical Arts of the University of Puerto Rico. His appointment was therefore permanent and he could not be removed unless charges were preferred against him and a hearing held thereon. Section 16 of Act No. 135, Laws of Puerto Rico, 1942, known as "Act of the University of Puerto Rico'". The Chancellor's

position is that such charges and hearing were unnecessary as Rivera had resigned as a professor in the University. When the Chancellor advised Rivera of this view, Rivera appealed to the Superior Educational Council pursuant to § 5 of Act No. 135, which provides in part that the Council "shall decide appeals that may be taken from acts or decisions of the chancellor . . .".

The Council designated Lic. Emilio S. Belaval, a member of the Council, to act as Examiner. Lic. Belaval conducted a hearing at which he permitted the introduction of documents and heard oral testimony which was reported stenographically. Thereafter both parties filed memoranda with the Examiner in support of their respective positions. After considering the record of the hearing and the memoranda, the Examiner made a report to the Council embodying his findings of fact and conclusions of law to the effect that Rivera had resigned and that his resignation had been accepted. He therefore recommended that the appeal be dismissed.

Rivera was furnished with a copy of the report of the Examiner. He was given ten days to file objections thereto with the Council. After he filed his objections, the Council decided the case on the basis of the record of the proceedings before the Examiner, the latter's report, and the objections of Rivera thereto. In its decision the Council adopted the (1) findings of fact, (2) conclusions of law and (3) recommendation of the Examiner to sustain the view of the Chancellor that Rivera had resigned.

The role of the courts in this controversy is a limited one. The Legislature did not provide in § 5 for review of decisions of the Council by the courts. On the other hand, neither did it provide that the decisions of the Council shall be final and binding. Counsel for the Chancellor at the oral argument conceded and we agree that under those circumstances the Legislature did not intend to preclude any judicial review whatsoever *in a case involving the tenure and status of a professor of the University. Cf. Núñez v. Be-*

*nítez, Chancellor,* 65 P.R.R. 812; Davis on Administrative Law, p. 812 *et seq.*[1] But we find no basis for holding that such a judicial review should consist of a trial *de novo.* On the contrary, the latter method is used to review the action of an administrative agency only when a statute specifically so provides. *Ortiz* v. *Venegas,* 43 P.R.R. 374; *Coll* v. *Todd, Mayor,* 35 P.R.R. 572; *Marín et al.* v. *Pagán,* 52 *D.P.R.* 966 per curiam; Davis, *supra,* p. 425 *et seq.* In the absence of such a statutory provision, the courts do not conduct a trial *de novo.* Rather they confine themselves to an examination of the record of the proceedings before the administrative agency, provided there is as in the instant case a complete record of such proceedings. And where as here the statute is also silent on the scope of review, the courts determine only whether the administrative body erred on questions of law. However, one of the questions of law is whether the administrative record contains substantial evidence to support the findings of fact of the administrative body. *Rent Director* v. *District Court, post,* p. 379; *Castro* v. *Gallardo, Treasurer,* 34 P.R.R. 194; *Coll* v. *Todd, Mayor, supra; Rivera* v. *Labor Relations Board,* 70 P.R.R. 320; *Buscaglia, Treas.* v. *Tax Court,* 70 P.R.R. 807; *Ruiz* v. *Industrial Commission,* 60 P.R.R. 223; *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474; *New York* v. *United States,* 331 U. S. 284, 334–35; *Kessler* v. *Stecker,* 307 U. S. 22; *Shields* v. *Utah Idaho R. Co.,* 305 U. S. 177; *Securities*

---

[1] As the Chancellor concedes that the appellant is entitled to judicial review of the decision of the Council in this case, we have not considered the possibility that other types of decisions of the Council might fit into the category of executive rather than quasi-judicial action of which no judicial review was contemplated. The argument would be that under those circumstances the Board would be functioning in the manner of a Board of Directors of a corporation supervising and approving the work of the chief executive of a corporation rather than as a quasi-judicial body. *Cf. Godreau & Co.* v. *Public Service Commission,* 71 P.R.R. 608.

We add that implied judicial review does not automatically exist for decisions of all administrative bodies. Each case must be determined in its own setting on the basis of the intent of the Legislature.

*Comm'n* v. *Chenery Corp.*, 332 U. S. 194; Davis, *supra*, p. 868 *et seq.;* Stern, Review of Findings of Administrators, Judges and Juries: A Comparative Analysis, 58 Harv. L. Rev. 70; Stason, "Substantial Evidence" in Administrative Law, 89 U.Pa.L.Rev. 1026.[2]

The foregoing makes it obvious why we cannot agree with Rivera's contention that the district court should have conducted a trial *de novo*. The appellant made an additional somewhat inconsistent argument before the Examiner that the Council should have decided his appeal solely on the record before the Chancellor and that the Council was therefore prohibited either from taking additional testimony or from conducting a trial *de novo*. We do not stop to determine to what extent that argument would be valid if there had been a formal charge and hearing before the Chancellor. As we have seen there never was any proceeding before the Chancellor, who simply took the position that Rivera had resigned. The Chancellor does not dispute the fact that under § 5 of Act No. 135 Rivera is entitled to a review by the Council of this "decision" of the Chancellor. But as there never was a hearing before the Chancellor, the proceeding conducted by the Examiner on behalf of the Council was necessarily the first hearing in the case. It is therefore obvious that under the circumstances both parties were at liberty to introduce before the Examiner all the relevant evidence which supported their respective positions, but that the case in the district court must be determined on the basis of the record before the Council.[3]

---

[2] The fact that Rivera labelled his suit as a petition for mandamus does not materially affect this case. We treat it as a petition for review as provided by implication in § 5 of Act No. 135. See *Núñez* v. *Benítez, Chancellor*, 65 P.R.R. 812.

[3] Although he does not press the point too strenuously, Rivera contends that the Council lacked authority to delegate the function of conducting the hearing to an Examiner. We cannot agree. Act No. 135 makes no specific provision to the contrary. And in view of the nature of the duties of the Board and its composition, we think it was proper for it to appoint an Examiner for this purpose. Davis, *supra*, p. 306.

With the foregoing background, we turn to a description of the proceedings before the district court. In support of his motion, the Chancellor filed his own affidavit describing the proceedings before the Examiner and the Council and attaching among other things (1) a stenographic record of the testimony adduced before the Examiner, (2) the latter's report, (3) the order of the Council affirming the action of the Chancellor, and (4) a sworn statement of the Permanent Secretary of the Council certifying that the documents attached to the Chancellor's affidavit were true and correct copies of the proceedings before the Council.

The only document offered in opposition to the motion of the Chancellor for a summary judgment was an affidavit by Rivera reading as follows: "That from 1926 to December, 1948 I held the post of Professor of Biology in the College of Agriculture and Mechanical Arts of Mayagüez, except for the past year, during which, with the express permission of the Chancellor, I devoted my time to the preparation of a biology textbook; that I have never presented my resignation as such professor, but on the contrary I have always wished to continue in the professorship I held for more than twenty years; that I have read the record of proceedings of the University Board of Mayagüez and especially that for the meeting of March 4, 1947 and the entire contents of said record are not true, especially with reference to the fact that I was granted a leave of absence; that charges have never been preferred against me and I have been deprived of my professorship by an arbitrary and unjust decision of the Chancellor of the University of Puerto Rico."

At this point it is appropriate to describe the pertinent portions of some of the documentary evidence contained in the record of the hearing before the Examiner. The minutes of the meeting of the University Board of Mayagüez on February 8, 1947, at which Rivera was present as the Faculty Representative, show that after a disagreement as to the appointment of an instructor, Rivera resigned then and there

as Acting Head of the Department of Biology and for the first time proposed that he would resign as a professor if he were given a leave of absence for the rest of the year and the next year in order to finish his book.[4] The record before the Examiner also contains a letter of February 15, 1947 from Rivera to the Secretary-Registrar of the University Board of Mayagüez in which he follows up his oral proposal at the meeting of February 8, 1947 that he intends to resign his professorship if he is granted a leave of absence to finish his book. The letter, which indicates on its face that it was sent through the Acting Head of the Biology Department, the Acting Dean of Science and the Vice-Chancellor, reads as follows:

"I have the honor to request of you a special leave of absence for 15 months with full pay, beginning June 30, 1947. It is my purpose to devote all that time to the completion of a text-book on General Botany which I am writing. I believe this work will be of great benefit to this College and to the University of Puerto Rico. *At the expiration of this leave of absence, I shall resign my post in this College in order to devote myself to the private practice of my profession.* I am acting ahead of time in requesting this leave of absence in order that you may

---

[4] The minutes read in part as follows:

"Chancellor: I recommend that Mr. Rivero be appointed as an Instructor.

"Mr. Méndez: How does this leave the matter?

"Chancellor: I am submitting the case to the Board.

"Mr. Méndez: I ask the Board to make the recommendation.

"Dr. Wiewall: I second the motion. The outcome of the vote was the following: three votes in favor; one against and three abstaining.

"Prof. Rivera Valiente: I vote against the appointment.

"Chancellor: The appointment is approved.

"Prof. Rivera Valiente: I vote against the recommendation to appoint Mr. Juan Rivero because I consider that Mr. Rivero is not qualified, because of his lack of experience as a teacher, to fill the vacancy in the Department of Biology resulting from the resignation of Instructor Mario Pérez Escolar. I am going to ask the Acting Dean of Science to ask the Chancellor to accept my irrevocable resignation as Acting Head of the Department of Biology.

"Dr. Wiewall: Resignations are presented in writing to the Chancellor through the Dean.

have the time necessary to select my replacement in my professorship in this College. In the hope that you will grant this leave of absence, I remain . . .". (Italics ours.)

On February 19, 1947 the Acting Head of the Department of Biology wrote to the Acting Dean of the Faculty of Science that Rivera's letter of February 15, 1947 had been referred to him for consideration and pertinent action, and that "I have no objection to the granting of the said leave of absence to Prof. Rivera Valiente, as I consider it just and reasonable. For that reason I recommend his request favorably, with the only condition that the leave of absence be only for the academic year, that is, for 12 months."

At the next meeting of the University Board of Mayagüez on March 4, 1947 Rivera advised the Board that he already had a candidate who could replace him. Whereupon the Chancellor replied that "the appropriate procedure is the recommendation of the Head of the Department and of the Dean and Vice-Chancellor and subsequent discussion in the Board." Rivera then stated that "The only interest I have is that for some reason no one shall say in September that there is no replacement, when there is one." Dr. Wiewall, the Acting Dean of the Faculty of Science, at this point stated

---

"Prof. Rivera Valiente: I present my irrevocable resignation as Acting Head of the Department of Biology.

"Chancellor: It is accepted.

"Prof. Rivera Valiente: In addition, I am going to ask the following: I am writing a book and I must take some photographs and make some drawings in order to finish it in a year and a half, that is, during the second semester and the entire school year of 1947–48. I request that I be granted a special leave with pay in order to finish this work which I think will bring prestige, not only to the Department of Biology of this College, but also to the College of Agriculture because it is the product of my knowledge and experience during twenty years.

"Chancellor: I wish to make all this clear. I have explained my points of view. All these circumstances should not weigh on your mind in this sense. It does not seem to me that it is good administrative policy for a person to resign because his opinion does not prevail, especially when it involves a structure within which there is a series of other persons who also have responsbility and functions which presuppose their intervention in matters of this nature. I wish to say to Mr. Rivera Valiente

that he had discussed the matter with the Acting Head of the Department, that the latter was taking steps to find a replacement for Rivera, and that a recommendation therefor would be made in accordance with established standards. The Chancellor then read aloud the request contained in the letter of Rivera of February 15, 1947 and the recommendations thereon of the Acting Head of the Department and of the Acting Dean of Science. Rivera then stated, "I accept the recommendations, but my leave should begin on September 1 because I have a right to three months' vacation." The record shows that the following then took place:

"Chancellor: The problem is that budgets are made from year to year and it is very doubtful if this Board may grant a leave of absence from September to September. It may be granted from June to June or from September to June, but it can not be granted to take effect outside the range of the budget within which it is operating.

"Prof. Rivera Valiente: If it is a legal question, that is all right because I do not recognize their capacity on a question of Biological Science; they lack the knowledge to determine if a book can be written in one year. When I asked for a leave of absence of fifteen months, it was to finish my book because I believe that that is the time I need in order to finish it. If

that institutions with a special structure such as this one should not be placed in a position in which a discrepancy in opinion among its officials who may have legitimate differences of opinion results in the withdrawal of said person from the services he is rendering with the acquiescence and esteem of persons who have other responsibilities. Consequently, I wish to say that I invite Mr. Rafael Rivera Valiente to withdraw his resignation and that he should certainly not consider it as irrevocable. I said that it was accepted because that is a natural consequence of that type of resignation, but here in the presence of all of you I insist that Mr. Rivera Valiente change his attitude and continue in the discharge of his duties.

"Prof. Rivera Valiente: I would withdraw it only if you withdraw the appointment of Mr. Rivero.

"Dean Ovidio García Molinari: I believe that Mr. Rivera Valiente ought to change his attitude.

"Prof. Rivera Valiente: You may call the men that I have mentioned, Prof. Lorenzo García Hernández and the Dean of Agriculture. You could grant me a leave of absence for the rest of this year and next year in order to finish my book and at the end of that year I would retire.

"Chancellor: Those are two different things.

it is a legal question, I accept it. *I shall resign upon the expiration of that leave of absence.*

"Chancellor: Returning to this petition for a special leave of absence of Professor Rivera Valiente, I find in the first place that from the petition, as it was originally filed, the Board can only act on a tentative basis. The principal leave which we shall consider shall take effect from July 1 to June 30. I understand that Professor Rivera Valiente wishes to be relieved, as early as possible, from his educational tasks, although of course, as we have said on other occasions, the wish of the Professor is subordinate to the educational convenience of the Institution and to the difficulties inherent in a situation in which the academic year is in the process of development. I think that if it were feasible, without any prejudice to the students of the College, to accede to the wishes of Professor Rivera Valiente and to relieve him from his responsibilities as a Professor, we could do it and there would be no objection. This, however, is subject to information which at this time is not in the hands of the University Board and hence no action can be taken immediately. It seems to me that perhaps the situation could be adequately harmonized if the petition of Professor Rivera Valiente is accepted in principle as well as the recommendation that an entire year's leave of absence with pay be granted to him to take effect not later than July 1, and that if it can be arranged for

---

"Prof. Rivera Valiente: I was always in disagreement with Toro as to uniting the Department of Botany with the Department of Zoology.

"Chancellor: Again I want to make it clear that I insist that you should reconsider your attitude; that irrevocable resignations call for no other alternative than their acceptance; now as to the matter of a leave of absence for Mr. Rivera Valiente, as well as of any other member of this College, I would look with great sorrow upon his departure from the College. It seems reasonable to me to study the possibility of permitting Professor Rivera Valiente to engage wholly or partially during the next year in his work of preparing his textbook and I am sure that it would prove of great advantage to all those persons interested in that subject. That is no reason why Mr. Rivera Valiente should deprive this institution of his services in asking for a leave of absence with pay to take effect immediately, which seems to me quite unusual.

"Prof. Rivera Valiente: I am willing to condition it on the finding of my successor. It is not because of that appointment that I have asked for this, I had already told Don Luis that I was thinking of resigning because now that I am young I want to get settled, I do not wish to reach old age and have only a pension."

him to have his leave earlier, that the possible candidates be brought before the Board.

"Prof. Rivera Valiente: I am going to ask the Dean of Science that if the candidate can come immediately, he would be doing me a great favor, and I could devote myself to the completion of my work.

"Vice-Chancellor: The question of replacing Mr. Rivera Valiente is something that must come up before the Board to be studied.

"Prof. Rivera Valiente: They already have a candidate.

"Dean of Agriculture: The College of Agriculture is interested in knowing who the candidate is.

"Chancellor: He should be brought to the Board to be considered; if possible, more than one candidate should be presented.

"Dr. Wiewall: I understand that there is more than one candidate whose services may be contracted but I am not so sure that any one of them could come immediately.

"Chancellor: I doubt that the change could be made now. The leave of absence will be granted from June to June, subject to be postponed to a later date in the event that arrangements can be made. A leave for one fiscal year which shall take effect in any event on July 1, 1947. (The leave is granted.)" (Italics ours.)

As hereinafter noted in detail, in April, 1947 Rivera was suspended in connection with certain charges. However, these charges were dropped in November, 1947, and it is undisputed that Rivera was then relieved of the duties of his professorship, was attached to the Agricultural Experimental Station, and was permitted to enjoy his special leave with pay while he worked on his book. When the Chancellor notified Rivera that his connection with the University ceased on December 31, 1948, the latter appealed from this "decision" of the Chancellor to the Council, which as we have seen agreed with the Chancellor.

We are now in a position to discuss the first assignment of error. We examine first Rivera's contention that the documents offered in support of the motion for summary judgment in the district court would not have been admissible in

evidence at the trial and therefore should not have been considered by the lower court in passing on the motion.[4a]

It is true that these documents could not be considered in connection with the motion for summary judgment unless they were admissible in evidence. *Hettinger & Co.* v. *District Court*, 69 P.R.R. 128. But we cannot agree with Rivera that they would have been inadmissible at the trial. As already noted, in view of the silence of § 5 of Act No. 135 as to review by the courts of the decisions of the Council and the method and scope thereof, the mission of the district court was not to conduct a trial *de novo*. Rather the lower court was required simply to examine the record of the administrative proceeding to determine if any errors of law had been committed, including the question of whether the record contained substantial evidence in support of the administrative decision. The record of the administrative proceeding was therefore not only admissible in evidence, but was the only evidence which the lower court could consider. Undoubtedly, because of the silence of § 5 on the procedure to be utilized to bring the administrative record before the lower court, the defendant could have answered and waited until the trial to produce the record. *Ortiz* v. *Venegas, supra*. But one of the purposes of Rule 56 of the Rules of Civil Procedure is precisely to avoid a trial where there is no genuine issue as to any material fact. Consequently, in the absence of a statutory scheme whereby the record is duly transmitted to the district court in ordinary course, Rule 56 (*e*) permitted the Chancellor to attach to his affidavit a properly authenticated copy of the administrative record in support of his motion

---

[4a] Neither party makes the contention that the Rules, including Rule 56 relating to summary judgments, do not apply to a petition for judicial review of this type of decision by the Council which we have held exists by implication under § 5 of Act No. 135. Under those circumstances we assume, without deciding, that the Rules apply herein. We note that whether or not the Rules apply, the scope of review is the same: it is confined to an examination of the administrative record to determine if any errors of law were committed.

for summary judgment. *Farm Bureau Mut. Ins. Co.* v. *Hammer*, 83 F.Supp. 383 (D. Ct., W. Va., 1949) ; *Bonds* v. *Sherburne Mercantile Co.*, 169 F. 2d 433 (C. A. 9, 1948) ; *United States* v. *Sinclair Refining Co.*, 126 F. 2d 827 (C. A. 10, 1942) ; see *Commercial Casualty Ins.* v. *District Court*, 71 P.R.R. 841.[5]

In asserting that the administrative record would be inadmissible at a trial, Rivera complains (1) that the record was not approved by any official, (2) that the stenographer who certified it took no oath, and (3) that it was prepared without the intervention of the appellant. But Rivera should have raised the second question before the Examiner. And he should have raised the first and third questions in the lower court in opposition to the motion for summary judgment. We cannot consider errors of this nature when they are raised for the first time on appeal to this Court. *Municipal Assembly* v. *González, Mayor*, 55 P.R.R. 526, 545; *Atiles, Mgr.* v. *Industrial Commission*, 69 P.R.R. 812. All the documents, including the administrative record, attached to the Chancellor's affidavit were certified by the Permanent Secretary of the Council, who has legal custody thereof. If Rivera had been interested in impugning the authenticity of the record, the time and place for him to do it was in his motion opposing the summary judgment. Except in his own affidavit, which as we shall presently see was inadequate on this point, Rivera took no action which raised any issue as to the authenticity of the record. His attempt to do it for the first time in this Court comes too late.

The appellant argues that he impugned the authenticity of the records of the proceedings of the University Board of Mayagüez in his affidavit attached to his opposition to the

[5] We note in passing that since the courts in deciding the issues herein are required to confine themselves to the record of the administrative proceeding, anything in the affidavits which purports to supplement that record must be disregarded. The case must stand or fall on the record alone, which speaks for itself.

motion for summary judgment. As we have seen, his opposing affidavit said in part, "That I have read the record of proceedings of the University Board of Mayagüez and especially that for the meeting of March 4, 1947 and. the entire contents of said record are not true, especially with reference to the fact that I was granted a leave of absence . . ."

However, the stenographic transcript of the hearing before Lic. Belaval shows that the records referred to by Rivera were admitted in evidence without any objection by Rivera. Indeed, his own attorney during the hearing offered to stipulate their authenticity. Subsequently, the Examiner in his report quoted verbatim the pertinent parts of the records; yet in his objections to the report Rivera did not question these quotations. Finally, the records formed part of the stenographic record of the hearing, the authenticity of which was likewise not challenged as such by Rivera in his opposing affidavit. In view of these considerations, the opposing affidavit means at the most that Rivera was simply reiterating his position that he had not resigned his post and was not an effort to impugn the authenticity of the records of the meetings.

Moreover, even if we were to hold that Rivera meant to attack the authenticity of the records in his opposing affidavit, he did not comply with the requirements of Rule 56 (*e*). This Court and other courts have held that the mere statement of a general conclusion in an opposing affidavit is not sufficient to raise a genuine issue of fact. Rather the opposing affidavits must set forth the pertinent facts in detail in order to avoid relief by summary judgment. *Hettinger & Co.* v. *District Court, supra,* pp. 133–35; *Engl* v. *Aetna Life Ins. Co.,* 139 F. 2d 469 (C.C.A., 2, 1943); *Piantadosi* v. *Loew's Inc.,* 137 F. 2d 534 (C.C.A. 9, 1943); *Ortiz* v. *National Liberty Ins. Co. of America,* 75 F. Supp. 550 (D. Ct., P. R., 1948). Rivera's opposing affidavit obviously does not meet this test. A mere sweeping statement that "the entire con-

tents" of the records of meetings of the University Board of Mayagüez "are not true, especially with reference to the fact that I was granted a leave of absence . . ." does not constitute a detailed statement showing in what respect duly certified records are specifically erroneous. To hold otherwise would be to permit a party merely by a bare-faced general denial of the accuracy of a written document, without any specific and detailed challenge thereof, to defeat a motion for summary judgment. We cannot countenance such a perversion of the language and purpose of Rule 56.

 Coming to the merits of the motion for summary judgment, the question of law remains whether the record before the Council contains substantial evidence to support its decision that Rivera had resigned his post. We put to one side the oral testimony before the Examiner as to various conversations between Rivera and the Chancellor at which others were present. Even without this testimony, there was substantial evidence—the records of the meetings of the University Board of Mayagüez of February 8, 1947 and March 4, 1947 and Rivera's letter of February 15, 1947 —to support the conclusion of the Council that Rivera actually resigned, to take effect after the expiration of a special leave granted to him in order that he could finish a book. The leave of absence was clearly predicated on the premise that his resignation was to take effect at its expiration. Having enjoyed a substantial leave of absence with pay, Rivera now wishes to repudiate the resignation which was the condition *sine qua non* on which the said leave was granted by resorting to grammatical pyrotechnics. In an effort to eat his cake and have it too, Rivera relies on the fact that his letter of February 15, 1947 is couched in the future tense. But in the context of events surrounding this letter—including the efforts to select his successor in which Rivera joined —to permit such a semantic *tour de force* to succeed would indeed be to make "a fortress out of the dictionary". *Cor-*

*dem, Auditor* v. *District Court,* 72 P.R.R. 354, 362. We hold that the record contains substantial evidence to support the conclusion of the Council that Rivera resigned in writing, to take effect on a specific future date.

We have not overlooked certain facts disclosed by the record on which the appellant relies in his brief. In April, 1947 there was a students' strike at the College of Agriculture. As a result of this strike charges were preferred against Rivera by the Vice-Chancellor and heard by the Chancellor. The latter removed Rivera, who appealed to the Council. The decision of the Chancellor was reversed by the Council which ordered a new hearing. On November 25, 1947, after a conference with the Vice-Chancellor and Rivera, the Chancellor dismissed the charges and publicly announced that Rivera would devote himself to writing his book. On the same date the Chancellor wrote Rivera a letter assigning him to the "tasks of Professor of Biology attached to the Agricultural Experimental Station of the University of Puerto Rico . . .". On December 19, 1947 counsel for Rivera replied to the Chancellor's letter that he did not need a new appointment to proceed to the Experimental Station and to accept one might jeopardize his status as a permanent professor and his right to pay for the period of his suspension pending hearing on the charges. The Chancellor replied on December 30, 1947 that his letter had not been intended as a new appointment but as an assignment to new duties. During the next year Rivera was attached to the Experimental Station on leave of absence with pay to enable him to write his book.

We are unable to follow Rivera's argument that this chain of events somehow made his resignation, embodied in his letter of February 15, 1947, ineffective. The Council was entitled to conclude that at the most it showed his concern for his back-pay and for his tenure as a permanent professor during the remaining portion of his leave of absence. There is nothing in the record which contains the slightest sugges-

tion that Rivera's resignation was not to take effect as originally planned. And the record contains sufficient evidence of acceptance of Rivera's resignation, which as here need not be accepted formally in writing but may be inferred from the surrounding circumstances and the conduct of the parties, including Rivera's acceptance of the length and conditions of his leave of absence, the abandonment by Rivera of his teaching duties and the selection of his successor. *Pace v. The People, ex rel*, 50 Ill. 432 (1869); *Murray* v. *State*, 89 S. W. 101 (Tenn., 1905); *State* v. *Board of Education*, 189 P. 915 (Kans., 1920); *Edwards* v. *United States*, 103 U. S. 471; *Rogers* v. *Carleton*, 110 P. 2d 908 (Okla., 1941); Mechem on Public Offices and Officers, pp. 264–5; Annotation, 95 A.L.R. 215. *Cf. Luce & Co.* v. *Labor Relations Board*, 71 P.R.R. 335, 346–50. We find nothing in § 208 of the Political Code which requires a contrary determination.[6]

In view of the foregoing, the lower court did not err in holding that there was no genuine issue as to any material fact in this case on the question of whether Rivera had resigned his post and in granting the Chancellor's motion for summary judgment as a matter of law. *Fernández* v. *District Court*, 71 P.R.R. 149; *Heirs of Guerra* v. *Sánchez*, 71 P.R.R. 756.[7]

The judgment of the district court will be affirmed.

---

[6] We think it appropriate to point out that what steps the respective parties took in connection with the alleged resignation are questions of fact on which the findings of fact of the Council, if supported by substantial evidence, are conclusive. But whether those facts as found by the Council constitute a resignation as a matter of law are in the final instance for this Court to determine. See Davis, *supra*, p. 868 *et seq.*

[7] The remaining assignments of error are covered by the foregoing discussion except the contention of the appellant that §§ 207 and 208 of the Political Code are applicable to professors of the University of Puerto Rico and that the record does not show that Rivera presented his resignation in writing as required by those Sections. We do not stop to determine if §§ 207 and 208 apply to professors of the University of Puerto Rico. *Cf. Maura* v. *Pension Board*, 49 P.R.R. 840; *Pereda* v. *Padín*, 49 P.R.R. 924; *State* v. *Ford*, 151 P. 2d 171 (Mont., 1944); *White* v. *Board of Regents*,

141 S. W. 414 (Ky., 1911); *Jacobs* v. *School Dist.,* 50 A. 2d 354 (Pa., 1947); *Enzor* v. *Faircloth,* 43 S. 2d 811 (Ala., 1949); *Sirmon* v. *Roberts,* 191 S. W. 2d 824 (Ark., 1946); Throop on Public Officers, § § 407–30. That question is rendered moot by our conclusion that Rivera resigned in writing.